[No. B222672. Second Dist., Div. Six. May 25, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD MICHAEL GALVEZ, JR., Defendant and Appellant.

**1256**

## COUNSEL

John Derrick, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Lance E. Winters and Tannaz Kouhpainezhad, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**YEGAN, J.**—The Legislature has the exclusive power to define crime and prescribe punishment. It has recently focused on criminal street gangs, dramatically increasing punishment for certain felonies committed for the benefit of, at the direction of, or in association with, the gang. For example, ordinary attempted witness dissuasion is a "wobbler," i.e., punishment by up to one year in county jail as a misdemeanor or in state prison for 16 months, two years, or three years. (Pen. Code, §§ 136.1, subd. (b), 18.)[1] When committed in the criminal street gang context, the punishment is increased to a potential life term. (§ 186.22, subds. (b)(4)(C), (e)(8).) This case shows that the law takes a dim view of gang members who interfere with the reporting of a crime in progress. Such interference strikes at the very heart of preserving public safety. It is a responsible act of citizenship to report street gang crimes. A gang member who seeks to harm the reporting individual deserves, and here receives, the full measure of the law.

Edward Michael Galvez, Jr., also known as "Monster," appeals from the judgment entered after his conviction by a jury of second degree robbery (count 1—§§ 211, 212.5), attempting to dissuade a witness (count 2—§ 136.1, subd. (b)(1)), assault by means of force likely to produce great bodily injury (count 3—§ 245, subd. (a)(1)), and active participation in a criminal street

---

[1] All statutory references are to the Penal Code unless otherwise noted.

gang (count 4—§ 186.22, subd. (a)). As to counts 1 through 3, the jury found true allegations that the offenses had been committed for the benefit of or in association with a criminal street gang. (§ 186.22, subd. (b)(1) & (4)(C).) As to the count 3 felony assault conviction, the jury also found true an allegation that appellant personally inflicted great bodily injury. (§ 12022.7, subd. (a).)

The trial court sentenced appellant to prison for an aggregate term of 19 years to life. The determinate term consisted of 12 years, five years for the robbery plus seven years for the felony assault with the great bodily injury enhancement, plus a consecutive indeterminate term of seven years to life for the witness dissuasion conviction with the gang enhancement.

Appellant contends that the evidence is insufficient to support the witness dissuasion and robbery convictions as well as the gang enhancements. He also contends that (1) as to the robbery count, the trial court erroneously failed to instruct sua sponte on the lesser included offense of theft and (2) the trial court made several sentencing errors. We conclude that, pursuant to section 654, the court should have stayed the five-year sentence for robbery. We modify the judgment to stay this sentence and affirm the resulting 14-year-to-life sentence.

*Facts*

In June 2007 William V. and three companions were walking by a restaurant in Carpinteria. A group of four or five Hispanic men including appellant, Anthony Garibay, Juan Alcala, and others, came out of a restaurant. One of the Hispanic men said that V. and his companions were "pussies." One of V.'s companions answered back, "Yeah, we are pussies." The Hispanic men ran toward V. and his companions and attacked them. V. was kicked in the head, side, and leg. He was also punched in the face.

Charles McChesney, an off-duty Santa Barbara police officer, witnessed the attack. He called 911 on his cell phone. While McChesney was still on the phone, one of the attackers asked, "Are you calling the police[?]" McChesney replied, "Yes, just take off." This attacker and several cohorts ran toward McChesney and assaulted him. The assailants included appellant, Garibay, and Alcala.

After receiving blows to various parts of his body, McChesney dropped the cell phone and fell to the ground. While on the ground, he was repeatedly "stomped on and kicked." McChesney sustained serious injuries, including a complete tear of a knee ligament, one broken rib and one or two cracked ribs,

facial abrasions and contusions, and a bruised kidney. The knee injury required surgical repair.

Another off-duty police officer saw McChesney on the ground. "[S]everal Hispanic males . . . were kicking and hitting" him. The officer concluded that McChesney "was in severe danger." He displayed his badge, yelled at the assailants, and identified himself as a police officer. The assailants fled. One of the assailants started to run away, but then turned around and grabbed McChesney's cell phone before fleeing. This assailant, who was not appellant, was the same man who had asked McChesney if he was calling the police.

Julie K. witnessed the assault on McChesney. She saw three men "going after the onlooker with the cellphone, trying to get his cellphone away from him." K. identified appellant as "the main attacker, the sort of leader of the group." K. saw appellant "[g]oing after [McChesney], trying to get his cellphone, and then . . . actually physically hitting and kicking him." Appellant hit McChesney while he was standing and kicked McChesney several times while he was on the ground.

Detective Christopher Corbett, a gang expert, testified as follows: Appellant, who weighs 300 pounds, is an active member of Carpas, the only criminal street gang in Carpinteria. The gang claims the entire city as its territory. Appellant's gang moniker, "Monster," is based on his size, his stature, and his penchant for violence. Two other persons who participated in the assault on McChesney, Garibay and Alcala, are also Carpas gang members.

The prosecutor propounded a hypothetical question incorporating the facts of the instant case. Detective Corbett opined that, based on the hypothetical facts, the offenses against the 911 caller were committed for the benefit of and in association with the Carpas criminal street gang.

### *Witness Dissuasion*

Appellant was convicted of violating section 136.1, subdivision (b)(1): attempting to prevent or dissuade a witness to a crime from reporting the crime to law enforcement. Appellant contends that the evidence is insufficient to support the conviction because "section 136.1, subdivision (b)(1), covers only the prevention or dissuasion of someone from reporting a crime of which they were a victim." He asserts that the statute "does not cover 'non-victim witnesses.' "

Appellant notes that he was convicted of attempting to prevent or dissuade McChesney from reporting the assault committed against V. and his companions, not the assault committed against McChesney. The jury was instructed that, to find appellant guilty of violating section 136.1, subdivision (b)(1), the People must prove that appellant "maliciously tried to prevent or discourage Charles McChesney from making a report that *someone else* was a victim of crime to the Santa Barbara Sheriff." (Italics added.)

■ We reject appellant's construction of the statute as applying only to victims who seek to report crimes committed against themselves. The words of the statute show a legislative intent to cover the prevention or dissuasion of any witness, victim or nonvictim, from reporting a crime. Section 136.1, subdivision (b)(1), provides in relevant part, "(b) . . . [E]very person who attempts to prevent or dissuade another person who has been the victim of a crime *or who is witness to a crime* from doing any of the following is guilty of a public offense . . . : [¶] (1) Making any report of that victimization to any peace officer or state or local law enforcement officer . . . ." (Italics added.) If the Legislature had intended the statute to apply only to victims of crimes, it would have omitted the italicized language.

*Robbery*

Appellant contends that the evidence is insufficient to support his conviction of robbery because (1) "the taking of the phone was, apparently, an *afterthought* [to the assault] by one of the assailants," (2) appellant did not personally take the cell phone, and (3) appellant was not liable as an aider and abettor because "there was no evidence that [he] even knew that the phone was being taken or knew of an intent to take it."

" ' "[W]e review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]" ' [Citation.] '. . . [W]e presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence.' [Citation.]" (*People v. Wilson* (2008) 44 Cal.4th 758, 806 [80 Cal.Rptr.3d 211, 187 P.3d 1041].) All conflicts in the evidence are resolved in favor of the judgment. (*People v. Neely* (2009) 176 Cal.App.4th 787, 793 [97 Cal.Rptr.3d 913].)

Substantial evidence supports the robbery conviction. The jury reasonably inferred that the taking of the cell phone was not a mere afterthought to the assault. Julie K. saw three men "going after the onlooker with the cellphone, trying to get his cellphone away from him." The assailants wanted to prevent McChesney from using the cell phone to call 911.

Although appellant did not personally take the cell phone, the jury reasonably inferred that he was liable as an aider and abettor because he knew of the perpetrator's intent to take the cell phone, shared that intent, and promoted the taking of the cell phone. (See *People v. McCoy* (2001) 25 Cal.4th 1111, 1117–1118 [108 Cal.Rptr.2d 188, 24 P.3d 1210].) K. identified appellant as "the main attacker, the sort of leader of the group." K. saw appellant "[g]oing after [McChesney], trying to get his cellphone, and then . . . actually physically hitting and kicking him."

### Gang Enhancements

 Appellant claims that the charging decision was "over-zealous," subjecting him to a life term even though there were no prior strikes. But, it is exclusively within the province of the Legislature to set the penalty for criminal conduct. (E.g., *In re Lynch* (1972) 8 Cal.3d 410, 414 [105 Cal.Rptr. 217, 503 P.2d 921].) We cannot say that the selection of a potential life term exceeds constitutional limits. (*Ibid.*) The prosecutor, in the exercise of discretion, may file any charges and enhancements when they are supported by probable cause. (See, e.g., *Davis v. Municipal Court* (1988) 46 Cal.3d 64, 77 [249 Cal.Rptr. 300, 757 P.2d 11]; Gov. Code, § 26501.)

 Section 186.22, subdivision (b)(1) and (4), specify enhanced punishment for persons convicted of a felony "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." Appellant concedes that the evidence is sufficient to show that "he was acting together with other gang members" and that he had the " 'specific intent to promote, further, or assist in . . . criminal conduct by gang members.' " Nevertheless, he argues that the evidence is insufficient to support the gang enhancements because there is no substantial evidence that the crimes were committed for the benefit of, at the direction of, or in association with the Carpas criminal street gang. Appellant asserts that the testimony of the gang expert, Detective Corbett, does not constitute the requisite substantial evidence.

"[T]he Legislature included the requirement that the crime to be enhanced be committed for the benefit of, at the direction of, or in association with a criminal street gang to make it 'clear that a criminal offense is subject to increased punishment under [section 186.22, subdivision (b)(1) or (4)] only if the crime is "gang related." ' [Citation.] Not every crime committed by gang members is related to a gang. [The crimes here], though, were gang related in two ways: they were committed in association with the gang, and they were

committed for the benefit of the gang." (*People v. Albillar* (2010) 51 Cal.4th 47, 60 [119 Cal.Rptr.3d 415, 244 P.3d 1062].)

The crimes were committed in association with the gang because "[t]he record supported a finding that [appellant and his fellow gang members] relied on their common gang membership and the apparatus of the gang in committing the [crimes] against [McChesney]." (*People v. Albillar, supra*, 51 Cal.4th at p. 60.) Detective Corbett explained that, when McChesney said he was calling the police, he became "a rat, and rats aren't tolerated in the gang life, so [McChesney] . . . was targeted, . . . was beaten severely, and was robbed for his phone so he couldn't make the 911 call." "Ratting," which means "cooperation with law enforcement . . . where [a gang member] could get in trouble," is "a form of disrespect." In gang culture, "everything is about respect." A gang member who does not respond to an act of disrespect will lose stature within the gang.

The crimes were committed for the benefit of the gang because, as again explained by Detective Corbett, the gang members' act of severely beating McChesney in a public place in gang territory "promotes fear, which, in essence, promotes their gang and their brutality to the community in which they live." "If you have a group of individuals . . . that attack somebody and they're together and they are with [a] gang, they are absolutely promoting fear in the furtherance of that gang in that community." "Fear is respect." Corbett's opinion is, in the context of this series of crimes, the clear and only import of the offenses.

As it pertains to attempted witness dissuasion, the uncontradicted evidence logically shows that the taking of the cell phone was to stop the reporting of a crime to the police. This is witness dissuasion in association with the gang and for the benefit of the gang. It also delayed medical aid to William V. and Officer McChesney which, in theory, could exacerbate the harm suffered.

Appellant contends that "[a] gang expert's testimony alone is insufficient to find an offense gang-related for section 186.22(b)(1) purposes." But there was "an underlying evidentiary foundation" for Detective Corbett's testimony. (*People v. Ochoa* (2009) 179 Cal.App.4th 650, 659 [102 Cal.Rptr.3d 108].) Appellant assaulted McChesney with other gang members and in territory claimed by the gang. Although no one called out the gang's name, the assailants' identity as Carpas gang members was obvious. Appellant had the word "Carpas" tattooed across his upper lip.

Our Supreme Court recently declared: "Expert opinion that particular criminal conduct benefited a gang by enhancing its reputation for viciousness

can be sufficient to raise the inference that the conduct was 'committed for the benefit of . . . a[] criminal street gang' within the meaning of section 186.22(b)(1)." (*People v. Albillar, supra,* 51 Cal.4th at p. 63.) Accordingly, we reject appellant's contention that the evidence is insufficient to support the gang enhancements.

### *Lesser Included Offense of Theft*

■ "Theft is a lesser and necessarily included offense in robbery; robbery has the additional element of a taking by force or fear. [Citations.]" (*People v. Ramkeesoon* (1985) 39 Cal.3d 346, 351 [216 Cal.Rptr. 455, 702 P.2d 613].) Appellant argues that the trial court erroneously failed to instruct sua sponte on the lesser included offense of theft.

■ "A trial court must instruct on a lesser included offense if substantial evidence exists indicating that the defendant is guilty only of the lesser offense. [Citation.] ' "Substantial evidence" in this context is " 'evidence from which a jury composed of reasonable [persons] could . . . conclude[]' " that the lesser offense, but not the greater, was committed. [Citations.]' [Citation.]" (*People v. Manriquez* (2005) 37 Cal.4th 547, 584 [36 Cal.Rptr.3d 340, 123 P.3d 614].)

There is no substantial evidence "that the offense, if committed by [appellant], was other than robbery." (*People v. Lewis* (1990) 50 Cal.3d 262, 277 [266 Cal.Rptr. 834, 786 P.2d 892].) As discussed above, the taking of the cell phone was not a mere afterthought to the assault on McChesney; it was one of the motivating factors for that assault. "There was nothing more than sheer speculation to support the scenario now advanced by [appellant] that the idea of taking the victim's [cell phone] did not arise until after the [assault]." (*Ibid.*)

### *Section 654*

■ "Section 654 precludes multiple punishments for a single act or indivisible course of conduct. [Citation.]" (*People v. Hester* (2000) 22 Cal.4th 290, 294 [92 Cal.Rptr.2d 641, 992 P.2d 569].) " 'Whether a course of criminal conduct is divisible . . . depends on the *intent and objective* of the actor.' " (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208 [23 Cal.Rptr.2d 144, 858 P.2d 611].) "[I]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once. [Citation.] [¶] If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit

of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' [Citation.]" (*People v. Harrison* (1989) 48 Cal.3d 321, 335 [256 Cal.Rptr. 401; 768 P.2d 1078].)

" 'The question whether . . . section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination. Its findings on this question must be upheld on appeal if there is any substantial evidence to support them.' [Citation.] . . . ' "We must 'view the evidence in a light most favorable to the respondent and presume in support of the [sentencing] order the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]' [Citation.]" [Citation.]' [Citation.]" (*People v. Tarris* (2009) 180 Cal.App.4th 612, 626–627 [103 Cal.Rptr.3d 278].)

 Appellant contends that section 654 precludes punishment for both robbery and the witness dissuasion offense because his objectives in committing these crimes were incidental to each other. This contention has merit. When appellant committed the witness dissuasion offense, his objective was "to prevent or dissuade" McChesney from using his cell phone to report to law enforcement the assault committed against V. and his companions. (§ 136.1, subd. (b)(1).) When appellant aided and abetted the commission of the robbery, his objective was to take McChesney's cell phone so that McChesney could not use it to contact law enforcement. As Detective Corbett testified, McChesney "was robbed for his phone so he couldn't make the 911 call."

However, we reject appellant's contention that section 654 also precludes punishment for both felony assault and attempting to dissuade a witness. As to these offenses, substantial evidence supports the trial court's implied finding of multiple criminal objectives. McChesney testified that he had "dropped" the cell phone "about the time [he] started taking blows." This was before McChesney fell to the ground. While on the ground, McChesney was repeatedly "stomped on and kicked" by his assailants even though he was no longer holding the cell phone. Based on Detective Corbett's expert testimony, it is reasonable to infer that appellant's primary objective in assaulting McChesney while he was on the ground was to enhance the gang's reputation for violence, not to dissuade or prevent him from using his cell phone to call the police. These distinct acts of violence were not incidental to the attempted witness dissuasion. They were gratuitous, extra, and may be separately punished without offending section 654. (See, e.g., *In re Chapman* (1954) 43 Cal.2d 385, 388–390 [273 P.2d 817]; *People v. Sutton* (1973) 35 Cal.App.3d 264, 271 [110 Cal.Rptr. 635].)

 "If . . . a defendant suffers two convictions, punishment for one of which is precluded by section 654, that section requires the sentence for one conviction to be imposed, and the other imposed and then stayed. [Citation.]" (*People v. Deloza* (1998) 18 Cal.4th 585, 591–592 [76 Cal.Rptr.2d 255, 957 P.2d 945].) The sentence imposed and not stayed must be the one "that provides for the longest potential term of imprisonment." (§ 654.) Here, the sentence for witness dissuasion (§ 136.1, subd. (b)(1)) provides for the longest potential term of imprisonment. Because of the gang enhancement (§ 186.22, subd. (b)(4)(C)), appellant was sentenced to an indeterminate term of life imprisonment with a minimum term of seven years. Accordingly, execution of the five-year sentence imposed for the robbery conviction must be stayed, the stay to become permanent on completion of the indeterminate sentence imposed for the witness dissuasion conviction with the gang enhancement. (*People v. Pearson* (1986) 42 Cal.3d 351, 361 [228 Cal.Rptr. 509, 721 P.2d 595].)[2]

### Alleged Failure to Exercise Discretion

Where, as here, the trial court imposes an indeterminate life sentence and a determinate sentence, it has discretion to decide whether the sentences shall be served concurrently or consecutively. (*In re Maes* (2010) 185 Cal.App.4th 1094, 1099 [110 Cal.Rptr.3d 900].) Here, the trial court imposed a consecutive sentence. Appellant contends that the trial court did not exercise its discretion because it erroneously believed that the indeterminate term must be served consecutively to the determinate term. The contention is based on the following colloquy between defense counsel and the court:

"[Defense counsel]: I assume there's authority that the indeterminate sentence, which is the seven to life, has to begin after the determinate sentence is completed?

"THE COURT: I believe that's the way . . . the Department of Corrections deals with that. I think that's based on authority."

"[A]bsent a showing to the contrary, the trial court is presumed to have known and followed the applicable law and to have properly exercised its discretion. [Citation.]" (*People v. Bradford* (2010) 187 Cal.App.4th 1345, 1355 [115 Cal.Rptr.3d 228].) We presume that in the above quoted colloquy the trial court was merely advising defense counsel of the rule that, "[w]hen a life sentence and determinate terms are ordered to be served consecutively, . . . 'the determinate term of imprisonment shall be served first and no

---

[2] Because the sentence for the robbery conviction must be stayed, we need not consider appellant's contention that the trial court erroneously ordered that the full upper terms imposed for robbery and felony assault be served consecutively to each other.

part thereof shall be credited toward the person's eligibility for parole as calculated pursuant to Section 3046 or pursuant to any other section of law that establishes a minimum period of confinement under the life sentence before eligibility for parole.' " (*In re Maes, supra,* 185 Cal.App.4th at p. 1100, quoting § 669.) We also observe that the trial judge is a veteran member of the bench, having served "decades." (See p. 1265, *post.*) It is too late in the day to infer that he was unaware of the discretion to impose a concurrent sentence.

### Alleged Punishment of Appellant for Exercising Right to Jury Trial

Appellant's cohorts, who pleaded guilty, were sentenced more leniently than appellant. Based on this, appellant argues that the trial court punished him for exercising his constitutional right to a jury trial.

Appellant's argument is based on speculation. The trial court "did not say anything reasonably giving rise to the inference that he was penalizing [appellant] for exercising his right to jury trial." (*People v. Szeto* (1981) 29 Cal.3d 20, 35 [171 Cal.Rptr. 652, 623 P.2d 213].) Immediately before pronouncing sentence, the trial court declared: "[T]his is one of the most callous, vicious assaults I've seen in my decades on the bench, and I don't think I've ever seen anybody with a track record like this defendant's. He's clearly a danger to society . . . ."

The trial court thus articulated its reasons for treating appellant severely. That his cohorts were sentenced to lesser terms pursuant to negotiated dispositions is no basis for a claim that appellant was punished for invoking the right to jury trial. The probation report quotes Detective Corbett as characterizing appellant as " 'the most violent of all the Carpas gang members.' " According to Julie K., appellant was "the main attacker, the sort of leader of the group" that assaulted McChesney. The probation report shows that appellant has an extensive criminal record. In these circumstances, we presume that appellant's leadership role in the crimes and his criminal record warranted a more severe sentence than the sentences meted out to his cohorts.

### Conclusion

The five-year sentence imposed for the robbery conviction (count 1) is ordered stayed, the stay to become permanent on completion of the indeterminate sentence imposed for the witness dissuasion conviction with the gang enhancement (count 2). As modified, the judgment is affirmed. The trial court

shall prepare an amended abstract of judgment and send a certified copy to the Department of Corrections and Rehabilitation.

Gilbert, P. J., and Coffee, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 31, 2011, S194528.