Filed 3/20/13  P. v. Gray CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LATAZ GRAY,<br><br>    Defendant and Appellant. | B234579<br><br>(Los Angeles County<br>Super. Ct. No. BA366644) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael D. Carter, Judge.  Affirmed in part, reversed in part.

Suzann E. Papagoda, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Susan Sullivan Pithey and David Zarmi, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

**INTRODUCTION**

Defendant Lataz Gray appeals from his conviction of second degree robbery (Pen. Code, § 211[1]), committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).[2] The trial court sentenced him to an aggregate state prison term of 13 years. Defendant contends the gang enhancement is not supported by substantial evidence. We agree and reverse the enhancement finding.

**FACTUAL AND PROCEDURAL BACKGROUND**

It is undisputed that defendant, an admitted member of the Black P-Stones gang, robbed Arthur Perdue (Perdue) on August 18, 2009. The People's theory was that it was a gang-related crime in retaliation for Perdue having expressed his lack of respect for defendant and his gang. The defense theory was that the robbery was for solely personal gain and not gang-related.

**A. *Prosecution*[3]**

On the afternoon of August 18, 2009, Perdue was sitting in his car with his seven-year-old son, who was playing on the car floor. Perdue was parked on 13th Avenue near the intersection with 25th Street in Los Angeles, an area controlled by the local Blood gang, the Black P-Stones. He was waiting for someone to come and repair his car. Outside of his T-shirt, Perdue was wearing a medallion on a long chain. The medallion

---

[1] All further statutory references are to the Penal Code.

[2] Defendant was 16 years old at the time of the offenses. He was tried as an adult, having also been charged in this case with attempted murder and shooting at an occupied motor vehicle, of which he was acquitted.

[3] The evidence concerning the counts of attempted murder and shooting at an unoccupied vehicle has been omitted.

consisted of a dollar coin surrounded by gold and diamonds. Perdue got out of his car and was approached by defendant, who had a "CK" tattoo on his face.

Perdue was approximately 48 years old.[4] As a former member of the Black P-Stones, Perdue recognized defendant's tattoo as meaning "Crip Killer." The Crips were a rival gang of the Bloods.

Defendant came up and asked Perdue, "What's up, Blood?" which, Perdue testified, was intended to ensure the person being asked was either a member or a former member of the same gang and not a member of a rival gang. Perdue responded, "What's happening, Blood?" At some point Perdue also said to defendant, "Been there, done that." Defendant then asked if Perdue knew where to get some marijuana. Perdue said he did not use marijuana, but defendant could ask the car repair person when he arrived.

Perdue started to feel uneasy about defendant and decided to leave. When Perdue turned to put his son back into the car seat, defendant snatched Perdue's chain and fled. Perdue got into the car and drove with his son to a nearby pawnshop, but the chain was not there.

Following defendant's arrest, an officer advised him of his rights to remain silent, to the presence of an attorney, and, if indigent, to appointed counsel (*Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694]), which defendant waived, admitted his gang membership and the theft of Perdue's chain. Defendant said he took the chain because he and Perdue had an argument, and then defendant pawned it. Defendant told the officer he did not know Perdue or of Perdue's affiliation with the Black P-Stones. Defendant explained: "I don't even know who the fuck he was. Maybe he's just a random. I mean, I seen his face. (Inaudible.) Maybe he's (inaudible). He'd get in. He'[d] be like a dog-whoo. Like. He'd get in. (Inaudible.) He'd be like, 'Where you from?' (inaudible). Whoopty-whoo. (Inaudible.) Like what you mean little nigga would be best if I get on your (inaudible). Fucked up. (Inaudible.) We started having words

---

**4**     Perdue testified that he was 50 years old at the time of trial in May 2011.

and shit what happened was (inaudible)."  "Basically, I don't know bloodstreams, but that's what I'm saying."

Los Angeles Police Officer Kenneth Sanchez testified as a gang expert for the People.  After detailing his background, training and experience, Officer Sanchez testified concerning the history, culture and territory of the Black P-Stones, a set or clique of the Blood gang, and described its rivalry with Crip gangs.  Officer Sanchez also explained the tattoos and gang signs typically displayed by Black P-Stones and their preferred attire.

The primary activities of the gang were robberies, burglaries, homicides, carjackings, extortions, thefts, and narcotics and illegal weapons possession.  Thefts committed by gang members were one of the quickest ways to generate money for gang parties, drugs and weapons.  The thief would receive a percentage of the proceeds and the rest would go to the gang.  According to Officer Sanchez, younger gang members enhanced their reputation and elevated their status among older gang members by committing thefts, or "putting in work," to bring in money for the gang and instill fear of the gang in the community.

Defendant used the moniker "Big Hoss" or "Big Hog" and had various tattoos that signified his membership in the Black P-Stones.  Officer Sanchez testified Perdue was an "OG" or older gangster, who helped start the Black P-Stones gang, although in 2009, Perdue was no longer an active member.

Officer Sanchez testified, based on a hypothetical that tracked the facts of this case, that the robbery was committed for the benefit of the gang.  He explained the significance of the verbal exchange between the thief and the victim.  In approaching the victim, the thief conveyed only that he was affiliated with a Blood gang, without revealing his Black P-Stones clique because "that would give him up."  When the victim responded in kind, similarly omitting his membership in a specific Blood clique, the victim demonstrated a lack of respect for the local Blood clique, the Black P-Stones.  Officer Sanchez also based his opinion on the type of crime, theft being a ready source of money for the gang, and on the brazenness of the crime, committed during daylight

hours, which demonstrated the thief's disrespect for the law and his fearlessness of potential witnesses. According to Officer Sanchez, all of these factors elevated the thief's status within the gang. On cross examination, Officer Sanchez testified that within the gang culture, a younger gang member would take an older gang member's chain without permission if he believed the older gang member disrespected him in some way, although the theft would be contrary to gang hierarchy.

**B.** *Defense*

Defendant testified in his own defense. Defendant admitted he was an active member of the Black P-Stones gang, and that he took Perdue's chain. However, defendant testified he committed the theft exclusively for his own benefit, not for the benefit of the gang. When defendant asked where Perdue was from, Perdue replied, "something like been there, done that," without answering defendant's question. Defendant did not know who Perdue was at the time. Defendant later learned he had stolen from a founding member of the Black P-Stones, for which defendant was disciplined. After taking the chain, defendant pawned it for $800 and used the money to buy clothes and shoes. Defendant did not turn over any of the money to the gang or tell fellow gang members about the theft, which defendant was not obligated to do if he committed the theft on his own.

## DISCUSSION

Defendant challenges the sufficiency of the evidence to support the gang enhancement. We agree, finding the evidence was insufficient to satisfy the specific intent element of section 186.22, subdivision (b)(1).

**A.** *Standard of Review*

In assessing the sufficiency of evidence to support a gang enhancement, we review the entire record in the light most favorable to the judgment, to determine whether

5

reasonable and credible evidence exists to support the decision of the trier of fact. (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60.)

## B. *Section 186.22, Subdivision (b)(1), Gang Enhancement*[5]

Section 186.22 is "a provision of the California Street Terrorism Enforcement and Prevention Act of 1988, also known as the STEP Act." (*People v. Castenada* (2000) 23 Cal.4th 743, 744-745.) When the charged offenses occurred in 2009, the statute read in part as follows: "(a) Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by imprisonment . . . . [¶] (b)(1) . . . [A]ny person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, [be punished] in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted . . . ."[6] (§ 186.22.)

---

[5]    We deferred submission in this case, pending the California Supreme Court's decision in *People v. Rodriguez* (2010) 188 Cal.App.4th 722, review granted January 12, 2011, S187680. Following the Court's decision on December 27, 2012 (*People v. Rodriguez* (2012) 55 Cal.4th 1125), we requested and received supplemental briefing from the parties on the effect, if any, of *Rodriguez* on the sufficiency of the evidence to support the gang enhancement. In *Rodriquez,* the Supreme Court held that the crime of participating in a criminal street gang (§ 186.22, subd. (a)) cannot be committed by a gang member acting alone. (*Rodriguez, supra*, at pp. 1128, 1139.) But that decision does not create an arguable issue here because the *Rodriguez* decision also indicated that a gang member acting alone can be subject to the section 186.22, subdivision (b)(1), enhancement. (*Rodriguez, supra*, at pp. 1138-1139 (lead opn. of Corrigan, J.); *id.* at p. 1141 (conc. opn. of Baxter, J.).)

[6]    Section 186.22 has since been amended, but there have been no changes to subdivisions (a) and (b)(1).

Violation of section 186.22, subdivision (a), is a substantive offense, the gravamen of which is participation in the gang itself. (*People v. Ngoun* (2001) 88 Cal.App.4th 432, 436.) Violation of subdivision (b)(1) results in an enhanced sentence. The scienter element of the substantive offense and the enhancement are essentially the same: intent to promote, further, or assist in *any* criminal conduct by gang members. The enhancement has the additional element that the crime to which the enhancement is attached must be gang-related. (*People v. Galvez* (2011) 195 Cal.App.4th 1253, 1260; see also *People v. Albillar*, *supra*, 51 Cal.4th at p. 56 [distinguishing between the criminal street gang enhancement and substantive offense].) Thus, for the enhancement to be found true, two prongs must be met. First, there must be evidence from which it is reasonable to infer that the underlying felony was "'committed for the benefit of, at the direction of, or in association with any criminal street gang.'" Second, there must be evidence that the defendant had "'the specific intent to promote, further, or assist in any criminal conduct'" by gang members. (*People v. Gardeley* (1996) 14 Cal.4th at 605, 615-616, italics omitted.)

### 1. For the Benefit of Any Criminal Street Gang

The first prong, requiring evidence from which it can reasonably be inferred the underlying felony was gang-related, can be satisfied by expert testimony. "Expert opinion that particular criminal conduct benefited a gang by enhancing its reputation for viciousness can be sufficient to raise the inference that the conduct was 'committed for the benefit of . . . a[] criminal street gang' within the meaning of section 186.22[, subdivision ](b)(1)." (*People v. Albillar*, *supra*, 51 Cal.4th at p. 63; *People v.* Vang (2011) 52 Cal.4th 1038, 1048; *People v. Vazquez* (2009) 178 Cal.App.4th 347, 354 [relying on expert opinion that the murder of a non-gang member benefited the gang because "violent crimes like murder elevate the status of the gang within gang culture and intimidate neighborhood residents who are, as a result, 'fearful to come forward, assist law enforcement, testify in court, or even report crimes that they're victims of for fear that they may be the gang's next victim or at least retaliated on by that gang'"].)

Here, the jury could have reasonably inferred that defendant's crime benefited a criminal street gang. The evidence showed defendant was a member of the Black P-Stones gang when he committed the robbery, and the gang expert testified that such crimes benefitted the gang financially, enhanced a gang member's standing within the gang and terrorized the community on behalf of the gang. Thus, the "benefit of" prong of the enhancement was supported by sufficient evidence.

### 2. Specific Intent to Promote/Further/Assist

To meet the second prong, there must be evidence from which it is reasonable to infer the defendant committed the underlying offense "with the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1); *People v. Albillar, supra*, 51 Cal.4th at p. 64.) "In common usage, 'promote' means to contribute to the progress or growth of; 'further' means to help the progress of; and 'assist' means to give aid or support. (Webster's New College Dict. (1995) pp. 885, 454, 68.)" (*People v. Ngoun*, *supra*, 88 Cal.App.4th at p.436 [construing § 186.22, subd. (a)].)

While the first prong was satisfied, we find the evidence was insufficient that in committing the robbery defendant specifically intended to benefit anyone other than himself. The case of *People v. Ramon* (2009) 175 Cal.App.4th 843 (*Ramon*) supports our decision. *Ramon* analyzed the sufficiency of the evidence on the specific intent prong of gang enhancement findings and found it wanting. Officers stopped the defendant, a conceded gang member, while he was driving a stolen vehicle within his gang's territory, with a fellow gang member in the passenger seat. (*Id.* at pp. 846-847.) Officers discovered a loaded, unregistered firearm under the driver's seat. (*Id.* at p. 847.) The People charged the defendant with receiving a stolen vehicle, possession of a firearm by a felon, possession of a firearm while an active gang member, and carrying a loaded firearm in public for which he was not a registered owner, as well as corresponding gang enhancements. (*Id.* at p. 848.)

8

At trial, a gang expert testified that one of the gang's primary activities was car theft. (*Ramon*, *supra*, 175 Cal.App.4th at p. 847.) The expert opined that by driving a stolen vehicle and bearing an unregistered firearm within his gang's territory, the defendant could conduct numerous crimes and simply dump the vehicle and gun thereafter, having no ties to them. (*Id.* at pp. 847-848.) Both could be used to spread fear and intimidation within the gang's territory. (*Id*. at p. 848.) In response to a hypothetical mirroring the facts of the case, the expert concluded the defendant's crimes would benefit his gang. The jury convicted the defendant of all the substantive counts and found true three of the four gang enhancement allegations. (*Ibid.*)

The appellate court vacated the gang enhancements, concluding the only "evidence" supporting an inference the defendant committed the instant crimes with the specific intent to promote, further, or assist criminal conduct by gang members was the expert witness's impermissible speculation as to the defendant's motive in committing the crimes, noting, "[t]here were no facts from which the expert could discern whether [the defendant and his compatriot] were acting on their own behalf the night they were arrested or were acting on behalf of [their gang]." (*Ramon*, *supra*, 175 Cal.App.4th at p. 851.)

As in *Ramon*, apart from the gang expert's testimony, there was no evidence offered by the prosecution from which a reasonable jury could infer the requisite intent. (See also *People v. Ochoa* (2009) 179 Cal.App.4th 650, 661-662 [nothing in the circumstances of the carjacking sustained the expert witness's inference that it was gang related].) Defendant approached Perdue, impliedly identified himself as a gang member, became angry at Perdue's responses and grabbed Perdue's chain and fled. Nothing in these facts suggest defendant was acting "to promote, further, or assist in any criminal conduct by gang members" under section 186.22, subdivision (b)(1). (*In re Frank S.* (2006) 141Cal.App.4th 1192, 1199 ["To allow the expert to state the minor's specific intent . . . without any other substantial evidence opens the door for prosecutors to enhance many felonies as gang-related and extends the purpose of the statute beyond what the Legislature intended."].) While defendant's self-identification as a gang

9

member at the outset of the encounter makes it possible to connect his ensuing robbery to his gang, a mere possibility is nothing more than speculation, which is not substantial evidence. (*Ramon, supra*, 175 Cal.App.4th at p. 851.) The prosecution did not introduce any evidence that this kind of robbery was a distinctively gang robbery or a "signature crime" perpetrated by defendant's gang (see *People v. Ochoa, supra*, 179 Cal.App.4th at p. 662), or that it was never committed by gang members for personal benefit. Nor was there evidence that any of the proceeds from the robbery were distributed to defendant's gang, that defendant's participation in the robbery was communicated to his fellow gang members, or that his gang's connection to the crimes was circulated within the surrounding community. Thus, there was insufficient evidence to support the section 186.22, subdivision (b)(1), enhancement.

## DISPOSTION

The section 186.22, subdivision (b)(1), gang enhancement is ordered reversed and stricken. In all other respects, the judgment is affirmed.

JACKSON, J.

We concur:

PERLUSS, P. J.

WOODS, J.