Filed 9/21/16  P. v. Dillingham CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE, | B267986 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA101904) |
| v. | |
| RICKY DILLINGHAM, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Tomson T. Ong, Judge.  Affirmed.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, and Scott A. Taryle, Deputy Attorney General, for Plaintiff and Respondent.

Defendant and appellant Ricky Dillingham was convicted of second degree robbery, kidnapping to commit robbery, false imprisonment by violence, and dissuading a witness by force or threat. The trial court sentenced him to 27 years to life in prison. He contends the sentence on the dissuading a witness conviction should have been stayed pursuant to Penal Code section 654.[1] We disagree, and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts*

On the afternoon of May 21, 2014, Leang Saur was working at Vy's Wireless, a Long Beach cellular telephone store. A counter inside the store separated the customer area from the employee area; a gate or door connected the two.

At approximately 3:00 p.m. Dillingham entered the store and told Saur his telephone was not working. Saur determined that the phone's charger "had a problem" and attempted to fix or replace it. After Dillingham had been in the store for "a long time," he entered the employee area behind the counter through the door and grabbed Saur from behind. Saur, who was 4 feet 7 inches tall and weighed 90 pounds, tried to get away and grab onto something. However, Dillingham, who was 5 feet 10 inches tall and weighed 220 pounds, was too strong for her and dragged her to a back room in the store.

Once in the back room, both Saur and Dillingham fell to the floor. Dillingham told Saur to stay in the back room, not to shout, and not to call the police. He also stated that he knew where she lived. He prevented her from leaving by blocking her path with his body.

Dillingham then returned to the front of the store and grabbed Saur's purse, which was at the counter area and apparently contained her cellular telephone. He also grabbed another phone that belonged to the store. Saur followed him. Dillingham told Saur that if she reported the incident to the police, "that he will go to my house and he will kill all of

---

[1] All further undesignated statutory references are to the Penal Code.

us." This frightened her because Dillingham had obtained her drivers' license, and she had young relatives at home. She was still frightened at the time of trial. Because Dillingham had taken her cellular telephone, Saur went to a nearby business and telephoned the police.

The incident was captured on the store's video surveillance cameras, and the video was shown to the jury. A thumbprint obtained from the store's door matched Dillingham's.

2. *Procedure*

Dillingham waived his right to counsel and represented himself at trial. A jury convicted him of the second degree robbery of Saur (§ 211, count 1); kidnapping to commit robbery (§ 209, subd. (b)(1), count 2); false imprisonment by violence (§ 236, count 3); and dissuading a witness by force or threat (§ 136.1, subd. (c)(1), count 4). After Dillingham waived his right to jury trial on the prior conviction allegations, the trial court found he had suffered a prior "strike" conviction for robbery, a serious felony (§§ 667, subds. (a)(1), (b)-(i), 1170.12, subds. (a) – (d)). It denied Dillingham's motion for a new trial and sentenced him to a term of 27 years to life in prison, configured as follows: on count 2 (kidnaping to commit robbery), 14 years to life, plus a consecutive five-year serious felony enhancement pursuant to section 667, subdivision (a)(1); and on count 4, dissuading a witness, the upper term of four years, doubled pursuant to the "Three Strikes" law, consecutive to the sentence imposed on count 2. Sentence on counts 1 (robbery) and 3 (false imprisonment) was stayed pursuant to section 654. The trial court further imposed a restitution fine, a suspended parole restitution fine, a court operations assessment, a criminal conviction assessment, and related penalty assessments.

## DISCUSSION

*The trial court was not required to stay sentence on count 4*

Dillingham contends that the trial court erred by imposing a consecutive sentence on count 4, dissuading a witness by force or threat. He urges the sentence on that count should have been stayed pursuant to section 654, because the dissuading charge involved

3

"the same set of operative facts as the kidnapping to commit robbery count." We disagree.

Section 654, subdivision (a), provides that an act or omission punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but not under more than one provision. Thus, section 654 bars multiple punishments for separate offenses arising out of a single occurrence where all were incident to an indivisible course of conduct or a single objective. (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1368, disapproved on another ground in *People v. Scott* (2015) 61 Cal.4th 363, 391, fn. 3; *People v. Calderon* (2013) 214 Cal.App.4th 656, 661; *People v. Galvez* (2011) 195 Cal.App.4th 1253, 1262.) Whether a course of criminal conduct is divisible depends on the intent and objective of the actor. If all the offenses were merely incidental to, or were the means of accomplishing one objective, the defendant may be found to have harbored a single intent and therefore may be punished only once. (*People v. Jackson* (2016) 1 Cal.5th 269, 354; *People v. Capistrano* (2014) 59 Cal.4th 830, 885-886; *People v. Sok* (2010) 181 Cal.App.4th 88, 99; *People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) But if the defendant harbored multiple or simultaneous objectives, independent of and not merely incidental to each other, he or she may be punished for each violation committed in pursuit of each objective even though the violations share common acts or were parts of an otherwise indivisible course of conduct. (*People v. Jones, supra*, at p. 1143; *People v. Sok, supra*, at p. 99.) The purpose of section 654 is to ensure that a defendant's punishment will be commensurate with his culpability. (*People v. Capistrano, supra,* at p. 886.)

Whether section 654 applies in a given case is a question of fact for the trial court, and its findings will not be reversed on appeal if there is any substantial evidence to support them. (*People v. Jackson, supra,* 1 Cal.5th at p. 354; *People v. Capistrano, supra*, 59 Cal.4th at p. 886; *People v. Jones, supra,* 103 Cal.App.4th at p. 1143.) To permit multiple punishment, " ' "there must be evidence to support [the] finding the

4

defendant formed a separate intent and objective for each offense for which he was sentenced." ' " (*People v. Capistrano, supra*, at p. 886.)

When imposing sentence on count 4 the trial court found the offense was "predominantly independent of" the other counts that involved "the robbery, kidnapping, and false imprisonment." "[T]he crime and object in count number 4, which is dissuading a witness, was predominantly independent of the counts 1, 2 and 3 involving the robbery, kidnapping and false imprisonment. [¶] Counts 1, 2, 3 were perfected before defendant committed count 4."

The trial court was correct. The evidence supported its finding that Dillingham had distinct intents and objectives in committing the two crimes of kidnapping for robbery and dissuading a witness. Moreover, the two crimes involved different acts. The kidnapping for robbery was accomplished by Dillingham's acts of dragging Saur to the back room and blocking her path with his body. The dissuading a witness offense was accomplished by his threats to kill her and her family if she reported the robbery to the police. As the People argue, Dillingham "used physical force to accomplish the kidnapping for robbery, but he used death threats to accomplish the witness intimidation." Dillingham's intent and objective in the kidnapping for robbery was to steal property. His intent and objective in the dissuading a witness offense was to avoid apprehension indefinitely after the crime was complete. That the offenses occurred moments apart is not dispositive. " 'It is [the] defendant's intent and objective, not temporal proximity of his offenses, which determine whether the transaction is indivisible.' " (*People v. Capistrano, supra,* 59 Cal.4th at p. 886; *People v. Chacon* (1995) 37 Cal.App.4th 52, 67 [that acts are proximate in time is not determinative in finding an indivisible course of conduct; multiple criminal objectives may divide those acts occurring closely together in time].)

*People v. Nichols* (1994) 29 Cal.App.4th 1651, is instructive. There the defendant and his confederates kidnapped a truck driver and hijacked his tractor trailer. During the two-hour kidnapping, defendant looked at the victim's driver's license and stated, " 'If

5

you open your mouth we are going to kill you. I know where you live.' " (*Id.* at p. 1654.) The defendant was convicted of, inter alia, kidnapping for robbery and attempting to dissuade a witness by threat of violence. (*Ibid.*) On appeal he urged that section 654 precluded sentence on both crimes because they were part of an indivisible course of conduct committed with one intent and objective. (*Nichols*, at p. 1656.) The appellate court concluded there was substantial evidence defendant had "two separate objectives: (1) to hijack the truck by kidnapping and robbing the victim and (2) to avoid detection and conviction by dissuading and intimidating the victim. [¶] The first objective was accomplished in two hours. The second was ongoing." (*Id.* at pp. 1657-1658.) The "means of achieving each objective was also different. A shotgun pressed against the victim's stomach achieved the first. Looking at the victim's driver's license, reading aloud his address, and threatening future harm achieved the second." (*Id.* at p. 1658.) The same is true here. (See generally *People v. Braz* (1997) 57 Cal.App.4th 1, 11-12 [multiple punishments permissible for child abuse and for failing to obtain aid for child within several hours after the fatal abuse occurred in order to avoid detection, because defendant had different objectives]; *People v. Solis* (2001) 90 Cal.App.4th 1002, 1022 [§ 654 did not bar imposition of sentence on arson and making terrorist threats; by threatening to kill the victims and burn down their apartment, defendant intended to frighten; by burning the victims' apartment an hour later he intended to burn].)

Dillingham argues *Nichols* is distinguishable because there the victim was handcuffed while in the truck, and the assailants could have escaped without any concern the victim would interfere. Here, in contrast, Dillingham had to make the threats in order to complete the robbery, i.e., to ensure the victim did not keep him from leaving the store. This contention is not persuasive. The threats were not made to allow Dillingham to actually take the purse and phones, as he suggests; they were made to convince Saur not to report the crime, enabling him to escape detection after the robbery was complete. The evidence showed Saur was unable to physically resist Dillingham in light of the great difference in their heights and weights. Moreover, Dillingham did not limit his comments

6

to telling Saur not to shout and to stay in the back room. After he took her purse he told her he would kill her and her family if she reported the crimes to police. Substantial evidence thus supports the conclusion Dillingham did not make the threats simply to effectuate the robbery, as he suggests.

Nor does Dillingham's citation to *People v. Galvez, supra,* 195 Cal.App.4th 1253 assist him. In *Galvez,* the defendant, a gang member, and several companions attacked another group of men without provocation. An off duty police officer witnessed the attack and called 911 on his cellular telephone. While he was on the phone one of the attackers asked whether he was calling the police. When the officer confirmed he was, Galvez and several of his cohorts assaulted him. After being struck numerous times, the officer dropped the phone and fell to the ground, while the assailants continued to stomp and kick him. (*Id.* at p. 1257.) When another off duty officer intervened, the assailants fled. One assailant grabbed the victim officer's cell phone before fleeing. Galvez was convicted of robbery, assault by means of force likely to produce great bodily injury, and attempting to dissuade a witness. (*Id.* at pp. 1256, 1258.) Section 654 precluded imposition of sentence on the witness dissuasion offense because Galvez had a single objective in that offense and in the robbery, i.e., to take the victim officer's phone so the officer could not call law enforcement. The victim was " 'robbed [of] his phone so he couldn't make the 911 call.' " (*Galvez*, at p. 1263.) However, section 654 did not bar imposition of sentence on the felony assault charge, because the evidence demonstrated multiple criminal objectives. The victim officer dropped the phone before he fell to the ground; while on the ground the assailants gratuitously stomped on and kicked him even though he was no longer holding the phone. Therefore it could be inferred that the defendant's primary objective in assaulting the officer while he was on the ground was to enhance the gang's reputation for violence, not to dissuade or prevent him from using the phone to call police. (*Galvez*, at p. 1263.*)*

In contrast to *Galvez*, here the evidence showed Dillingham did not take the phone because he wished to prevent Saur from phoning police; instead he took the purse (which

presumably contained the phone) because he wished to *rob* Saur of her property.  To find him guilty of kidnapping to commit robbery, the jury had to conclude Dillingham moved Saur with the specific intent to commit robbery, and that he had that specific intent when the movement commenced.  (CALJIC No. 9.54; CALCRIM No. 1203.)  He thus intended the robbery before he dragged Saur into the back room, demonstrating his theft of the purse was not, as in *Galvez,* to prevent her from reporting the crime.  Moreover, the *Galvez* court concluded the defendant could be separately punished for the gratuitous assault that occurred immediately after the victim dropped his phone.  Similarly, here, section 654 does not preclude punishment for the threats made with a different objective immediately after Dillingham grabbed the purse.

DISPOSITION

The judgment is affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



ALDRICH, Acting P. J.



We concur:



LAVIN, J.



STRATTON, J.**\***

---

**\*** Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.