Filed 10/19/20  P. v. Vargas CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CARLOS JUAQUIN SANCHEZ VARGAS,<br><br>Defendant and Appellant. | B301513<br><br>(Los Angeles County<br> Super. Ct. No. BA471048) |

APPEAL from the judgment of the Superior Court of Los Angeles County.  Frederick N. Wapner, Judge.  Affirmed.

Benjamin Owens, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Acting Senior Assistant Deputy Attorney General, Roberta L. Davis and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Carlos Juaquin Sanchez Vargas was convicted of multiple sexual offenses with a child under 10 years of age and sentenced to prison for a term of 15 years to life, plus 12 years.

Defendant contends his trial counsel was ineffective for failing to move for the suppression of his pretrial statement to law enforcement. He further argues the trial court misunderstood its sentencing discretion and that a new sentencing hearing is warranted.

We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Defendant was charged with two counts of sexual penetration with a child 10 years old or younger (Pen. Code, § 288.7, subd. (b); counts 1 & 2) and three counts of committing a lewd act upon a child (§ 288, subd. (a); counts 3, 4 & 5).

Defendant's victim, S.S., testified at trial that he assaulted her numerous times at her family's church. Over a period of months (S.S. was eight and nine years old at the time), S.S. would see defendant on the church grounds. She and her family were at the church three to four days each week. Oftentimes, defendant would approach her when she was outside and away from other children or adults. Other times, he would sit down next to her while they were in the church or the cafeteria.

Defendant first touched her private parts over her clothes, but the next time he pushed his hand under her clothes. Defendant grabbed her hand so she could not run away from him. She would tell him to stop but he did not listen to her. S.S. did not tell anyone what was happening because defendant told her "he was gonna do something that was bad to [her]." Defendant also touched her buttocks and her chest, both over and under her

clothes. She would try to push his hands away but he would not stop.

S.S. said one day defendant approached her when she was sitting outside and kissed her. He pushed his tongue into her mouth. "He didn't stop until he wanted to."

More than once, defendant inserted his finger into her private parts. S.S. tried to get away from him but was unable to do so. She eventually told her parents and it was reported to law enforcement.

S.S. identified herself in the videotaped recording of her forensic interview that took place in September 2018 shortly after the assaults were reported to police. The videotape was played for the jury.

During the interview, S.S. explained the assaults in a manner substantially consistent with her trial testimony, but with some additional detail. She said that defendant grabbed her "so hard" the time he kissed her outside the church that she wanted to scream but was too scared. S.S. said when he touched her buttocks or her chest, he would squeeze her with his hand. He also told her to wear a dress to church so he could touch her privates. When defendant put his fingers inside her, it hurt. Defendant told S.S. it felt good. Defendant also tried to get S.S. to touch his private parts but she always pulled her hand back and resisted.

Detective Jason Kim testified regarding his videotaped interview with defendant. Detective Kim explained that defendant initially denied touching S.S., but eventually admitted he had touched her, but only with his hands. Defendant also admitted that he digitally penetrated S.S. Excerpts of the recorded interview were played for the jury.

3

Defendant did not testify and did not present any witnesses.

The jury found defendant guilty as charged. The court sentenced defendant to prison for an aggregate term of 15 years to life plus 12 years, calculated as follows: 15 years to life on count 1, the base term, a concurrent term of 15 years to life on count 2, a consecutive upper term of eight years on count 3, and consecutive two-year terms on each of counts 4 and 5 (one-third the midterm). The court imposed various fines and fees and awarded defendant 449 days of presentence custody credits.

This appeal followed.

## DISCUSSION

### 1. Defendant Has Not Shown Ineffective Assistance of Trial Counsel

Defendant contends his appointed trial counsel was ineffective and violated his constitutional rights by failing to seek the suppression of his pretrial confession to law enforcement. We are not persuaded.

Defendant's burden to establish ineffective assistance of trial counsel on direct appeal is stringent. He "must show both that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates, and that it is reasonably probable a more favorable determination would have resulted in the absence of counsel's failings." (*People v. Cudjo* (1993) 6 Cal.4th 585, 623, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687-696.) " ' "Reviewing courts will reverse convictions [on direct appeal] on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for [his or

4

her] act or omission." ' "  (*People v. Lucas* (1995) 12 Cal.4th 415, 437.)

Defendant argues any reasonable attorney would have objected to the admission of the pretrial statement because Detective Kim minimized the significance of the warnings given pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436 and because he used improper psychological coercion appealing to defendant's religious beliefs.  Defendant argues the failure to exclude his statement was prejudicial because he would have likely received a more favorable outcome at trial if the jury had only the victim's testimony standing alone to consider.

Defendant has not shown either element of an ineffective assistance claim.  In arguing that a reasonable attorney would have necessarily moved to exclude his statement, defendant mischaracterizes Detective Kim's conduct during the interview.

Here, Detective Kim, at the start of the interview, took off defendant's handcuffs and brought him a glass of water. Defendant volunteered he did not like to drink really cold water ever since an accident he had years earlier that resulted in the loss of a kidney.  The two spoke briefly about that experience. Detective Kim then said that before "we go on talking," "I . . . have to read you some questions really fast, and, and after that, we'll go on with our conversation, okay?"  Detective Kim explained they were statements that have to be read to all the people they interview.  Defendant responded, "of course."

Detective Kim advised defendant he needed an audible response to each question and then clearly read each part of the standard *Miranda* warnings, obtaining a separate "yes" response from defendant as to whether he understood each right, including the rights to remain silent and to have an appointed lawyer

5

present. At the conclusion of the *Miranda* warnings, Detective Kim asked if defendant was willing to talk about what led to his arrest and defendant said, "yes."

There was nothing improper about the *Miranda* warnings nor did the brief initial conversation, initiated by defendant, trivialize their importance. It is not improper for law enforcement to engage in "small talk" or try to build rapport with a suspect with neutral background questions. (See, e.g., *People v. McCurdy* (2014) 59 Cal.4th 1063, 1087 [initial questions attempting "to establish a rapport" with the defendant do not raise the specter of a constitutional violation]; *People v. Gamache* (2010) 48 Cal.4th 347, 388 ["small talk" and general, neutral inquiries regarding the defendant's military experience did not amount to interrogation designed to elicit an incriminating response].)

Detective Kim's statement that the advisements were something that had to be read to everyone was not a misrepresentation and was similar to the statement found unoffensive in *People v. Musselwhite* (1998) 17 Cal.4th 1216, 1237 (*Musselwhite*). There, the officer spoke with the defendant briefly and then preceded his recitation of the *Miranda* warnings with the following statement, " '[w]ell, we don't know what you know and what you don't know and so, what we'd like to do is just go ahead and advise you of your rights before we even get started and that way, that there's no problem with any of it. Is that alright with you?' " (*Ibid.*) Defendant's waiver was properly obtained.

Further, defendant was not subjected to psychological coercion. "In evaluating a claim of psychological coercion, the 'question posed . . . is whether the influences brought to bear

6

upon the accused were "such as to overbear petitioner's will to resist and bring about confessions not freely self-determined." ' " (*People v. Kelly* (1990) 51 Cal.3d 931, 952.)  In this vein, "the tactic of exploiting a suspect's religious anxieties has been justly condemned."  (*Id.* at p. 953.)

Here, there were frequent references to God and spiritual themes during the initial part of the interview, many of which were initiated by defendant.  Detective Kim sometimes elaborated on the religious themes and told defendant he too was a Christian.  Some of the comments related to defendant staying on the church grounds and seeking guidance from the pastor there (subjects defendant raised with the detective), and to the fact the crimes were committed at the church.

Significantly, defendant did not make *any* admissions during this part of the interview.  He spoke generally about men having "temptations" but said he did not "touch that girl."  As the interview continued, Detective Kim reiterated "the most important thing" was for defendant to tell the truth.  " '[M]ere advice or exhortation by the police that it would be better for the accused to tell the truth when unaccompanied by either a threat or a promise does not render a subsequent confession involuntary.' "  (*People v. Holloway* (2004) 33 Cal.4th 96, 115; see also *People v. Davis* (2009) 46 Cal.4th 539, 600 [officer's exhortation to the defendant to " 'get it all out in the open' " and to get everything off his chest did not render subsequent confession involuntary]; & *People v. Carrington* (2009) 47 Cal.4th 145, 170-172 [officer may extoll the psychological or moral benefits of telling the truth].)

Detective Kim eventually used a ruse, telling defendant, falsely, that tests had been "positive" and showed defendant had

touched S.S.'s private parts. Detective Kim confirmed they were not talking about rape or defendant having used his penis, only that he had touched S.S. with his hands. It was during this discussion that defendant admitted he had touched S.S. with his hand. Defendant said he had spoken to "Brother Tony" at the church and told him he needed to leave because S.S. was "very playful" and "bugging me a lot." Defendant eventually admitted he inserted his finger into her private parts.

Looking at the interview in its entirety, we are satisfied there was no psychological coercion that motivated defendant's admissions. Rather, it was the ruse about the positive forensic testing that likely motivated defendant to choose to explain what happened. (*People v. Farnam* (2002) 28 Cal.4th 107, 182 [Lies told by law enforcement as interview tactic not per se improper and do not automatically render any subsequent statement involuntary]; accord, *Musselwhite*, *supra*, 17 Cal.4th at p. 1240.)

More importantly, defendant has not shown prejudice. The victim's testimony in this case was compelling and powerful, both her live testimony and the videotaped forensic interview. The consistency in her statements, along with the additional details she provided during the forensic interview, bolstered her credibility. Defendant's statement only included generalized admissions to some of the assaultive behavior. It is not reasonably probable the jury would have disregarded S.S.'s testimony had defendant's statement been excluded. Defendant has not shown it was reasonably probable he would have obtained a more favorable outcome if his counsel had successfully objected to the admission of his statement.

8

## 2. The Record Does Not Support a Finding the Trial Court Misunderstood Its Sentencing Discretion

Defendant argues that if we are not inclined to reverse for a new trial, he is entitled to a new sentencing hearing because the trial court did not understand it had the discretion to run the determinate terms concurrent with the indeterminate terms. The contention lacks merit.

"It is a basic presumption indulged in by reviewing courts that the trial court is presumed to have known and applied the correct statutory and case law in the exercise of its official duties." (*People v. Mack* (1986) 178 Cal.App.3d 1026, 1032; see also *People v. Moran* (1970) 1 Cal.3d 755, 762 [presumption that official duty has been regularly performed].)

Here, the parties' sentencing memoranda focused on counts 1 and 2, the indeterminate counts. Defendant focused almost exclusively on arguing for both indeterminate counts to be run concurrently, which the court ultimately chose to do. Similarly, the prosecution focused on the indeterminate terms but also asked the court to exercise its discretion to impose consecutive sentences on the determinate counts.

At the sentencing hearing, the court clearly explained its sentencing choices, saying it was imposing "15 years to life" on count 1 "plus the 12 years on the last three counts." The court then stated it was imposing a concurrent 15-years-to-life term on count 2 because the court believed an aggregate term of 27 years was fair and "appropriate" and that 30 years to life on just the first two counts would be "out of proportion." The court then stated its reasoning for imposing the high term of eight years on count 3, including that defendant was on probation at the time the crimes were committed and he attempted to blame the minor

9

victim for his conduct. The court imposed two-year terms (one-third the midterm) on each of counts 4 and 5. The court summed up by reciting the "total sentence on counts 3, 4 and 5 is 12 years in the state prison. That is to be served before the 15 years to life on counts 1 and 2."

"Where, as here, the trial court imposes an indeterminate life sentence and a determinate sentence, it has discretion to decide whether the sentences shall be served concurrently or consecutively." (*People v. Galvez* (2011) 195 Cal.App.4th 1253, 1264.) In arguing that the trial court was unaware of this basic aspect of its sentencing discretion, defendant points to the following passage at the conclusion of the sentencing hearing, during a discussion of various fines. The court said: "[t]he sentences in counts 3, 4, and 5, by operation of law, are consecutive to counts 1 and 2 because they have—they're determinate sentences to be served before the indeterminate sentence." The court then proceeded to advise defendant of the requirement that he register as a sex offender. Defendant's entire argument hinges on this stray reference to "by operation of law."

The trial judge is one of the most experienced judges sitting in the downtown Los Angeles central criminal court. Considering the entirety of the court's thorough explanation of its sentencing choices, we find defendant's reliance on this one errant comment is without merit. (See, e.g., *People v. DeJesus* (1995) 38 Cal.App.4th 1, 30 [trial court's statement "about imposing the term required by law" was not indicative of a failure to appreciate its sentencing discretion].)

## DISPOSITION

The judgment of conviction is affirmed.


GRIMES, J.

WE CONCUR:


BIGELOW, P. J.


STRATTON, J.