Filed 8/26/13  P. v. McClain CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ROBERT AVERY McCLAIN,<br><br>    Defendant and Appellant. | G047168<br><br>(Super. Ct. No. 08HF1870)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Gary S. Paer, Judge.  Affirmed.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Christine Levingston Bergman, Deputy Attorneys General, for Plaintiff and Respondent.

*        *        *

A jury found defendant Robert Avery McClain guilty of aggravated mayhem (Pen. Code, § 205; all further statutory references are to this code; count 1); torture (§ 206; count 2), forcible oral copulation (§ 288a; count 3); attempted sexual penetration by a foreign object by force (§§ 289, subd. (a)(1), 664; count 4); spousal rape by force (§ 262, subd. (a)(1); count 5); sodomy by force (§ 286, subd. (c)(2); count 6); false imprisonment as a lesser included offense of kidnapping to commit a sex offense (§ 236; count 7); and inflicting injury on a spouse resulting in traumatic injury (§ 273.5, subd. (a); count 8). It also found true allegations he personally used a knife and firearm in committing count 1, a knife in committing count 2, a firearm in committing counts 3, 4, 5, and 6, and that in committing count 8, he personally inflicted great bodily injury.

The court sentenced defendant to two consecutive indeterminate life terms, two consecutive 15 years to life terms, plus an additional 19 years and 8 months. He contends his sentences for aggravated mayhem and false imprisonment should have been stayed under section 654. We conclude no error occurred and affirm the judgment.

FACTS

In September 2008, defendant's wife (wife) told him she wanted a divorce. Defendant, a sheriff's deputy, asked if she was seeing another man and she eventually admitted she was. At defendant's request, wife took him to meet her lover, Michael, around 10 p.m.

When Michael opened the door, defendant escorted him outside and led him and wife to the leasing office where wife worked and made her open the door. Once inside, defendant confronted Michael, asking "'How many times did you sleep with my wife?'"

2

Michael took one step toward the door before defendant punched him in the face so hard that his head hit the ground and he appeared unconscious. Defendant got on top of Michael and repeatedly punched him in the head, causing Michael's body to convulse. When wife attempted to stop defendant, he punched and kicked her. Defendant then returned to punching and kicking Michael, who remained unconscious and did not move, saying, "'You are fucking my wife,'" and "'Get up. Get up.'"

Wife tried to call for help but defendant threw her on the ground and ripped the phone out of the wall. When she tried to grab her cell phone out of her pocket, defendant grabbed it and beat her some more. Michael was still unconscious. At times he would appear to regain consciousness and try to get up but defendant punched and kicked him until he passed out again.

After beating Michael for about 15 to 20 minutes, defendant noticed a tattoo on Michael's arm and pulled out two guns and a knife from his pockets. Stating he was going to kill Michael, defendant started beating him on the head with one of the guns. Defendant then took the knife and sliced Michael's arm where the tattoo was, as well as his face, causing blood to gush and Michael to moan.

When wife attempted to stop defendant, he punched her and sliced her face. She reminded him of their four children and his job as a police officer, but defendant replied, "'It's over. I am going to serve at least 15 years for this.'" Defendant removed Michael's shirts and pants, slashed his chest and inner thighs, and plunged his knife into the groin area, causing blood to appear through Michael's underwear. Defendant thereafter took off Michael's underwear, slashed his penis with the knife while continuing to punch him, then flipped him over and dug the knife into Michael's anus. When Michael screamed, defendant stuffed his underwear into his mouth.

After forcing wife to orally copulate both himself and Michael, defendant placed the knife in her vagina and began cutting her, stating, "'If I go away for 15 years, nobody else is going to have you.'" When Michael started groaning, defendant moved

3

towards him and wife ran for the door. She was able to open it and scream before defendant pulled her back inside.

Upon dragging wife back into the leasing office, defendant urinated on both her and Michael before slicing Michael's face with the knife and placing a gun in his mouth to prop his head up. Defendant gave the gun to wife, telling her there was only one bullet inside and to shoot either him or Michael. Wife aimed between them and pulled the trigger three times, but there was only a clicking sound. She then pointed the gun at defendant and pulled the trigger but again the gun did not go off. Enraged, defendant grabbed the gun and hit wife with the butt of the gun.

Defendant went back to Michael and punched him until he fell down, whereupon he grabbed Michael around the neck, strangling him and hitting his head against the ground. Handing the knife to wife, defendant told her to cut off Michael's penis, but she told him the knife was too dull so he forced her at gunpoint to stab Michael in the penis, although she tried to only graze him.

Defendant eventually agreed to leave but had wife tie up Michael. Before leaving, defendant told wife he would kill Michael if she tried to run or scream. He led her to the car and had her sit in the passenger seat, instructing her not to try to get out. Defendant started to drive to their home but changed his mind and drove in the opposite direction. He said wife made him do this and that he thought he had killed Michael.

Ultimately, he drove to a secluded residential area, put the barrel of the gun to her temple and threatened to kill her. He used the knife to cut off her hair and slice her face, stating, "'You think you are so pretty. Nobody is going to think you are pretty after this.'" After telling her to take off her pants and saying, "'I'm going to jail for a long time and I'm going to have sex with you before I do,'" defendant sodomized and vaginally raped wife. When defendant finished, wife jumped into the back seat and opened the car door but he grabbed her hand; wife vomited outside the car.

4

Defendant began driving toward their Irvine apartment. Upon arriving home, he forced wife take a shower and write a letter stating she cheated on him. He choked her, calling her a whore and a bitch and stating she was selfish and that everything was her fault. Defendant called wife's sister and told her wife had cheated on him. Wife screamed "'help'" and ran out the front door but defendant caught her and knocked her out.

Wife woke up on the couch of their apartment. When defendant fell asleep, she woke the children and tried to leave the apartment but an alarm beeped, waking defendant up. Although he ordered everyone back inside, wife sent the children, who were crying because of her appearance, to the car. Defendant allowed them to drive away, but asked wife to promise she would bring them to visit him in prison because he was "'go[ing] away for a long time.'"

Wife drove to the emergency room. The next morning, police found Michael standing in the break room, naked and unresponsive and had him transported to the hospital. Defendant was arrested.

DISCUSSION

*1. Introduction and Relevant Legal Principles*

Defendant contends his concurrently imposed sentences on counts 1 (torture) and 7 (false imprisonment) should have been stayed under section 654.

"'Section 654 precludes multiple punishments for a single act or indivisible course of conduct.'" (*People v. Galvez* (2011) 195 Cal.App.4th 1253, 126 (*Galvez*). When it applies, "the accepted 'procedure is to sentence defendant for each count and stay execution of sentence on certain of the convictions to which section 654 is applicable.'" (*People v. Jones* (2012) 54 Cal.4th 350, 353.) "'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the

5

meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.'" (*People v. Correa* (2012) 54 Cal.4th 331, 336.) "[A] course of conduct divisible in time, though directed to one objective, may give rise to multiple convictions and multiple punishment 'where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and renew his or her intent before committing the next one . . . .'" (*People v. Lopez* (2011) 198 Cal.App.4th 698, 717-718.) "'If . . . defendant harbored "multiple criminal objectives," which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, "*even though the violations shared common acts or were parts of an otherwise indivisible course of conduct*."'" (*Galvez*, at pp. 1262-1263, italics added.) "A trial court's [express or] implied finding that a defendant harbored a separate intent and objective for each offense will be upheld on appeal if it is supported by substantial evidence." (*People v. Blake* (1998) 68 Cal.App.4th 509, 512.)

*2. Aggravated Mayhem*

Defendant's sentence included two consecutive life terms for his convictions on counts 1 (aggravated mayhem) and 2 (torture). He contends his sentence for aggravated mayhem must be stayed because the acts upon which it was premised, i.e., cutting Michael's face and penis with the knife, were encompassed within the acts constituting the torture charge, which was based on everything defendant did to Michael in the leasing office and both offenses "were committed with the same intent and objective of inflicting pain and damage upon Michael." We disagree.

Aggravated mayhem requires the prosecution to prove the defendant intended to permanently disable or disfigure the victim. (See *People v. Quintero* (2006) 135 Cal.App.4th 1152, 1162 ["Aggravated mayhem is a specific intent crime which

6

requires proof the defendant specifically intended to cause the maiming injury, i.e., the permanent disability or disfigurement"].) Torture on the other hand requires "'specific intent to cause cruel or extreme pain and suffering for revenge, extortion or persuasion or any sadistic purpose.'" (*People v. Burton* (2006) 143 Cal.App.4th 447, 451-452.)

In determining section 654 did not bar sentencing on both aggravated mayhem and torture, the court found persuasive the prosecutor's argument defendant "formed the separate intent and objective for each offense." For mayhem, the prosecutor argued, and the court agreed, that defendant slashed Michael's face and genitalia with the intent to permanently disfigure him "because he knew Michael was the object of [wife's] desire." That this was defendant's intent is supported by the fact that while he was slicing Michael's face, defendant asked, "'You like fucking my wife, Michael?'" Additionally, just before stabbing Michael's groin area, defendant said to wife, "'Look at this white boy. You are cheating on me with this? This is what you are leaving me for?'" Then while he continued slashing Michael's penis, defendant queried, "'This is pathetic. Look how small he is. And you are leaving me for this[?]'"

By contrast, in addition to finding "defendant had the time to reflect and consider his actions," the court endorsed the prosecutor's claim that defendant's intent in committing torture for revenge was "to emotionally and physically damage Michael in the three-hour ordeal in side the leasing office." As stated by the court, defendant did this "by punching him about the face and body, kicking him, stomping on his chest, placing a gun to his head, threatening to kill him, shoving a knife inside his rectum, stripping him of his clothes, placing the barrel of the gun into his mouth, yelling and screaming at Michael, binding him with a strap, urinating on him, forcing [wife] to orally copulate him, and leaving Michael bleeding for nearly six hours after the beating." The record confirms these acts occurred, which, as the court found, "go well beyond the slashing of Michael's face and groin." Given that the prosecutor made these arguments in the trial court, defendant's claim this was not how the case was tried lacks merit.

7

The evidence also substantiates the court's determination defendant had time between offenses to reflect and consider his actions. In *People v. Trotter* (1992) 7 Cal.App.4th 363 (*Trotter*), the defendant was convicted of three counts of assault for firing three shots at a police officer who was following him in a freeway chase. The first two shots were about a minute apart, and the third shot came a few seconds later. The defendant argued that all three shots could not be punished separately under section 654 because they "manifested the same intent and criminal objective." (*Trotter*, at p. 367.) *Trotter* rejected the argument, stating that "this was not a case where only one volitional act gave rise to multiple offenses. Each shot required a separate trigger pull. All three assaults were volitional and calculated, and were separated by periods of time during which reflection was possible. None was spontaneous or uncontrollable. '[D]efendant should . . . not be rewarded where, instead of taking advantage of an opportunity to walk away from the victim, he voluntarily resumed his . . . assaultive behavior.'" (*Id*. at p. 368.)

Similarly, here, defendant punched and kicked Michael for 15 to 20 minutes before pausing when he noticed the tattoo on Michael's arm. At that point, he took out his knife, along with his guns, and began slicing Michael's arm, face, and subsequently stabbing him in the groin. Defendant then changed gears and had wife orally copulate himself and Michael before placing the knife in her vagina, stating, "'If I go away for 15 years, nobody else is going to have you.'" Only after that did defendant resume the acts the court found constituted the torturing of Michael. As in *Trotter,* defendant's commission of the acts constituting aggravated mayhem and torture were separated by periods during which he had time to reflect on his actions.

Because substantial evidence supports the court's finding defendant had two distinct criminal objectives, which were independent of and not merely incidental to each other, section 654 does not prohibit separate punishments for the aggravated mayhem and torture. (See *People v. Assad* (2010) 189 Cal.App.4th 187, 200 [torture and

8

aggravated mayhem against same victim but based on different acts not part of same course of conduct].)  Defendant distinguishes *Assad* on the basis it involved "multiple different incidents occurring on multiple different days . . . ."  That may be, but as *Trotter* demonstrates, a defendant may be independently punished for crimes "separated by periods of time during which reflection was possible" (*Trotter*, *supra*, 7 Cal.App.4th 368), notwithstanding their commission on the same day, within a short time period, and the sharing of common acts.  (*People v. Galvez*, *supra*, 195 Cal.App.4th at p. 1263.)  The court found that to be the case and we will not reweigh the evidence.

*3.  Felony False Imprisonment*

Although defendant was charged in count 7 with kidnapping to commit spousal rape, the jury found him not guilty of that charge and the lesser included offense of simple kidnapping, but guilty of the lesser included offense of felony false imprisonment.  The court sentenced defendant to 15 years to life on count 5 (spousal rape) and 8 months for count 7 (false imprisonment).  In sentencing defendant for the false imprisonment, the court explained it was a separate crime from domestic battery, which occurred when wife "was prevented from leaving the car" or arguably when "she was prevented from leaving the leasing office."

Defendant contends the sentence on count 7 should have been stayed under section 654 because it "was necessarily incidental to [his] sentence for spousal rape in [c]ount [5]."  Defendant cites the prosecutor's argument that count 7 was based on his acts of forcibly moving wife from the leasing office, driving her in his car for a substantial distance without her consent, and then pulling the car over and raping her.  Defendant reasons that, since the jury rejected the kidnapping to commit spousal rape and simple kidnapping charges, both of which require nonconsensual movement, the guilty verdict on count 7 "demonstrates that the jury found [him] guilty of the lesser included offense of felony false imprisonment by forcibly detaining her inside the car while he

9

raped her on the side of the road." We also note the prosecutor's argument in its sentencing brief with regard to count 7 that wife "was prevented from leaving or escaping their car during the drive from the leasing office to the city of Corona and back to their apartment in Irvine."

Even so, defendant's argument ignores the court's finding the false imprisonment arguably occurred when defendant prevented wife from leaving the leasing office. When wife attempted to flee from the leasing office, defendant grabbed her arm to pull her inside and wrapped his arm around her neck, dragging her back to the leasing office and threatening to kill her if she tried to leave. Before they left the leasing office, defendant stated he would "blow Michael's head off" if she tried to run or scream. Defendant then led wife to the car, holding her arm and, after placing her in the passenger's set, told her not to try to get out. After driving to a secluded area, defendant raped wife, stating, "'I'm going to jail for a long time and I'm going to have sex with you before I do.'" These facts support the court's implicit finding defendant harbored two separate intents and objectives: falsely imprisoning wife to prevent her from running away and getting help, and forcibly raping her in the car because it was going to be a long time before he had sex again. (See *People v. Saffle* (1992) 4 Cal.App.4th 434, 438-440.) They also sustain an implied finding the false imprisonment was not incidental to the spousal rape, which was separated by a time period allowing for reflection after the false imprisonment in the leasing office. (See *People v. Surdi* (1995) 35 Cal.App.4th 685, 689 [section 654 inapplicable where crimes "did not arise from a single volitional act [but] . . . were separated by considerable periods of time during which reflection was possible"]; *People v. Trotter*, *supra*, 7 Cal.App.4th at p. 368 [same].)

Defendant asserts the court's finding the false imprisonment could have been based on his detention of wife in the leasing office was "flawed" because he was not charged with that in count 7 but "with kidnapping for spousal rape based on wife's transportation in the vehicle, and the jury found [him] to only have committed the lesser

10

included offense of felony false imprisonment based on that conduct." But the "application of section 654 does not depend on the *allegations* of the charging instrument, but on what was *proven* at trial." (*People v. Assad*, *supra*, 189 Cal.App.4th at p. 200.) Additionally, absent "some circumstance 'foreclosing' its sentencing discretion . . . a trial court may base its decision under section 654 on *any* of the facts that are in evidence at trial, without regard to the verdicts. . . . After all, a court may even rely on facts underlying verdicts of *acquittal* in making sentencing choices." (*People v. McCoy* (2012) 208 Cal.App.4th 1333, 1340.)

Even if the trial court was required to accept and rely upon the same theory asserted by the prosecution (see *People v. Coelho* (2001) 89 Cal.App.4th 861, 876; see also *People v. Jones* (2012) 54 Cal.4th 350, 359 [concluding Court of Appeal properly refused to rely on an argument not previously argued]), the prosecutor's closing argument raised the possibility of false imprisonment premised on the events in the leasing office. The prosecutor discussed defendant's actions after he and wife left the leasing office in the context of the element of movement necessary to establish the offense of kidnapping to commit spousal rape. In doing so, the prosecutor noted that prior to being taken to the car wife had been beaten in the office for nearly three hours and warned, "'If you run, I'll kill you. If you scream, I'll blow Michael's head off.'" This, along with the evidence, was sufficient to place the issue of false imprisonment in the leasing office before the jury.

Moreover, even if we limit our review to the prosecutor's arguments to the jury and in his sentencing brief, the court's implied finding of separate intents and objectives was still supported by substantial evidence. In *People v. Foster* (1988) 201 Cal.App.3d 20 (*Foster*), the defendants were convicted of robbery and false imprisonment and sentenced to consecutive terms for those offenses. *Foster* rejected the claim section 654 barred separate punishment on false imprisonment, concluding "[t]he imprisonment of the victims occurred *after* the robbers had obtained all of the money,

11

and therefore was not necessary or incidental to committing the robbery." (*Foster,* at p. 27.) It added that the false imprisonment was "analogous to a needless or vicious assault committed after a robbery . . . ." (*Ibid.*)

Similarly, here, the evidence shows that after raping wife, defendant prevented her from leaving the car. His false imprisonment of her was not merely incidental to the spousal rape but continued after defendant had finished raping her. Based on this evidence, the court could have reasonably concluded defendant continued to detain wife after the rape in order to prevent her from reporting his crimes. Because the evidence is sufficient to sustain a finding defendant falsely imprisoned wife pursuant to an objective that was independent of the spousal rape, separate punishment was not proscribed by section 654.

DISPOSITION

The judgment is affirmed.

RYLAARSDAM, J.

WE CONCUR:

O'LEARY, P. J.

IKOLA, J.

12