Filed 3/7/16  P. v. Avila CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE LEWIS AVILA,<br><br>    Defendant and Appellant. | B260179<br><br>(Los Angeles County<br>Super. Ct. No. GA083067) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Michael Villalobos, Judge.  Affirmed in part and reversed in part and remanded with directions.

Jean Ballantine, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Jose Lewis Avila went on a crime spree lasting less than a month, from March 20, 2011, through April 15, 2011, but during which he committed follow-home robberies of nine separate victims while using a handgun, assault with a deadly weapon on a bystander, dissuading a witness from reporting a crime, and child abuse by shooting a robbery victim in the face as she held her two-year-old son.

The jury found defendant guilty as charged of nine counts of robbery (Pen. Code, § 211; counts 1-5, 7, 9, 10, and 12),[1] assault with a deadly weapon (§ 245, subd. (a)(1); count 6), dissuading a witness from reporting a crime (§ 136.1, subd. (b)(1); count 8), and child abuse (§ 273a, subd. (a); count 11). The jury also found true the allegations that, as to all counts, defendant personally used a deadly and dangerous weapon (§ 12022, subd. (b)), and, that as to count 10, he personally inflicted great bodily injury (§ 12022.7, subd. (a)). The trial court found true the allegations that defendant suffered two prior convictions that qualified as strikes under the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and a prior serious felony conviction (§ 667, subd. (a)(1).

Defendant was sentenced to prison for 12 consecutive indeterminate terms of 25 years to life pursuant to the Three Strikes law, plus a determinate term of 74 years based on the enhancement findings.[2] The court imposed 25 years to life on each of counts 1 through 12, plus a consecutive five-year term for the serious felony enhancement (§ 667, subd. (a)(1)) on each of these 12 counts; a one-year use enhancement (§ 12022.5, subd. (b)) on each of counts 1 through 5 and 7 through 12; and a three-year great bodily injury enhancement (§12022.7, subd. (a)) on count 10.

On appeal from the judgment, defendant contends his right to confrontation (U.S. Const., 6th Amend.) was violated when the trial court allowed the preliminary hearing testimony of Casey Chang (count 9) and that of Xiaomeng Xu (count 12) to be read to the jury, because the prosecution failed to establish due diligence in obtaining the presence of

---

[1] All further section references are to the Penal Code unless otherwise indicated.

[2] The trial court found true and then struck the two 1-year prior prison term allegations (§ 667.5, subd. (b)).

2

these two witnesses for trial. He contends his sentence for the robbery of Olivia Lin (count 7) or his sentence for dissuading Lin from reporting the robbery (count 8) must be stayed, because the underlying conduct of these counts is part of the same individual course of conduct with a single objective, and, as such, violate the multiple punishment bar of section 654 and thereby the federal Constitution's "Fifth Amendment's double jeopardy prohibition against being punished twice for the same crime, which results in an unauthorized sentence." He also contends remand for resentencing is warranted to enable the trial court to exercise its discretion to sentence concurrently or consecutively as to counts 1, 2, 5, 6, 7, 8 10, and 11, because the court did not understand the availability of such discretion.

We reverse defendant's sentence and remand with directions to the trial court to exercise its discretion whether to impose consecutive or concurrent sentences as to counts 1, 2, 5, 6, 7, 8, 10 and 11. The trial court's comments and rulings reflect the court misunderstood its authority to impose concurrent sentences as to these counts. As respondent concedes, in view of such misunderstanding, "the matter should be remanded for the trial court to exercise its discretion on whether to impose consecutive or concurrent sentences on [these] counts."

In all other respects, we affirm the judgment. Admission of the preliminary hearing testimony of Chang and of Xu did not abridge defendant's constitutional right to confrontation. The record reflects the prosecution exercised in good faith the requisite due diligence to obtain the presence of these two witnesses but the efforts were unsuccessful. No violation of the double jeopardy proscription (U.S. Const., 5th Amend.) is implicated where, as here, the commission of robbery was committed without committing dissuading a witness from reporting a crime. Section 654 is inapplicable to the sentences on counts 7 and 8, because defendant entertained separate objectives.

## BACKGROUND

1. *Robberies of Cuong Lieu and Lilian Nguyen (Counts 1, 2)*

On March 20, 2011, about 8:15 p.m., Lilian Nguyen, who returned with her family from a visit with her father, drove down the driveway of their Alhambra home and

3

parked.  Once her husband, Cuong Lieu, exited, defendant pointed a gun at him and then at Nguyen, demanding money from each.  Taking Lieu's wallet and Nguyen's purse, defendant fled.

2. *Robbery of Jenny Chih (Count 3)*

On March 25, 2011, about 10:00 p.m., after work, Jenny Chih returned to her Alhambra apartment and parked in her carport.  After she exited her car, defendant approached, pointed a gun at her, and demanded her purse.  Defendant shoved Chih to the ground and held the gun at her head.  Chih gave up her purse.

3. *Robbery of Xu (Count 12)*

On April 7, 2011, about 11:00 p.m., Xu drove to her condominium in Monterey Park and parked.  Defendant approached from the rear of her car.  After Xu exited, he pointed a BB gun at her head and demanded her purse.  Xu gave up her purse.  As defendant fled, he fired three to five shots at Xu.

4. *Robbery of Ping Chin  (Count 4)*

On April 8, 2011, about 12:40 a.m., Ping Chin returned to her San Gabriel home, parked her car, and exited.  As she approached her front gate, defendant appeared suddenly, poked his gun into Chin's back, and grabbed her purse.  He ordered her to "move" and not "turn back."  As he fled, he fired a BB gun twice.

5. *Robbery of Chang (Count 9)*

On April 13, 2011, about 12:56 a.m., Chang was driving to her San Gabriel home when she noticed a dark-colored SUV following her.  After Chang pulled into her driveway, the SUV parked in front of her house, and defendant exited.  Quickly approaching with gun in hand, he ordered Chang, who screamed, to "shut up" and grabbed her purse.  Chang began to follow as defendant fled, but Chang stopped after defendant fired a BB gun at her, striking her left hand.

6. *Robbery of Sumei Lui and Assault with a Deadly Weapon on Diana Lui (Counts 5, 6)*

On April 13, 2011, about 10:18 p.m., Sumei Lui returned to her San Gabriel home from a supermarket trip, opened the gate, and parked in the carport.  Defendant blocked

4

her from closing the gate. Pointing a gun at Sumei, he demanded her purse. When she screamed, her daughter, Diana Lui, ran out of the house. Defendant fired a BB gun at Diana five to 10 times, striking her three times. Sumei gave up her purse.

7. *Robbery of Lin and Dissuading Lin from Reporting a Crime (Counts 7, 8)*

On April 13, 2011, about midnight, Lin returned home to her Alhambra apartment and parked in the detached garage. She was about to close the garage door when defendant came up behind her. At gunpoint, he ordered her to turn around and give up her purse. After Lin complied, he told her, "Don't call the cops because I know where you live." He then told her to turn around and walk back into her garage. Lin had walked about halfway into the garage when she heard two to three "popping sound[s] that sounded like . . . firecrackers." Defendant drove off in a dark SUV.

8. *Robbery of Hor Wong and Child Abuse of Wong's Son (Counts 10, 11)*

On April 15, 2011, about midnight, Hor Wong returned to her Arcadia home and parked her vehicle in the driveway. A Dodge Magnum was parking in front of her neighbor's house. Wong walked to her door with her two-year-old son. She was holding a purse and a laptop computer. Defendant rushed towards them with a BB gun in hand. As Wong kneeled while holding her son, he took her laptop and demanded her purse. He shot Wong in the face with the BB gun, just below her eye. Wong was holding her son as he shot. He then took her purse.

Defendant relied on a mistaken identity defense.

### DISCUSSION

**1.** *Evidence of Due Diligence to Obtain Trial Witnesses Substantial*

Defendant contends his constitutional right to confrontation (U.S. Const., 6th Amend.) was violated by admission at trial of the preliminary hearing testimony of Chang and of Xu, because the prosecution failed to show due diligence in securing Chang and Xu for trial. Further, he contends admission of such testimony was prejudicial, because he did not have the same ability and opportunity to cross-examine Chang and Xu at the preliminary hearing as he would have been afforded at trial. We conclude no violation of defendant's right to confrontation transpired.

5

A. *Applicable Legal Principles*

"A criminal defendant has the right under both the federal and state Constitutions to confront the witnesses against him. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) This right, however, is not absolute. [In *Crawford v. Washington* (2004) 541 U.S. 36, the United States Supreme C]ourt . . . reaffirmed the long-standing exception that '[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine.' ([*Id*. at p.] 59; see *People v. Cromer* (2001) 24 Cal.4th 889, 892.) Evidence Code section 1291 codifies this traditional exception. [Citation.] When the requirements of . . . section 1291 are met, 'admitting former testimony in evidence does not violate a defendant's right of confrontation under the federal Constitution. [Citations.]' [Citation.]" (*People v. Wilson* (2005) 36 Cal.4th 309, 340 (*Wilson*).)

"Evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness" and "[t]he party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing." (Evid. Code, §1291, subd. (a)(2).) "'[U]navailable as a witness'" includes a declarant who is "[a]bsent from the hearing and the proponent of his or her statement has exercised reasonable diligence but has been unable to procure his or her attendance by the court's process." (Evid. Code, § 240, subd. (a)(5).)

"The term 'reasonable diligence' or 'due diligence'. . . "'connotes persevering application, untiring efforts in good earnest, efforts of a substantial character. [Citations.]'" [Citation.] Considerations relevant to this inquiry include the timeliness of the search, the importance of the proffered testimony, and whether leads of the witness's possible location were competently explored. [Citation.]" (*Wilson*, *supra*, 36 Cal.4th at 341.)

"A witness who is absent from a trial is not 'unavailable' in the constitutional sense unless the prosecution has made a 'good faith effort' to obtain the witness's

6

presence at the trial. [Citation.] The United States Supreme Court has described the good faith requirement this way: 'The law does not require the doing of a futile act. Thus, if no possibility of procuring the witness exists (as, for example, the witness' intervening death), "good faith" demands nothing of the prosecution. But if there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of good faith *may* demand their effectuation. "The lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness." [Citation.] The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness.' [Citation.]" (*People v. Herrera* (2010) 49 Cal.4th 613, 622 (*Herrera*).)

Additionally, "when a criminal trial is at issue, unavailability in the constitutional sense does not invariably turn on the inability of the state court to compel the out-of-state witness's attendance through its own process, but also takes into consideration the existence of agreements or established procedures for securing a witness's presence that depend on the voluntary assistance of another government. [Citation.] Where such options exist, the extent to which the prosecution had the opportunity to utilize them and endeavored to do so is relevant in determining whether the obligations to act in good faith and with due diligence have been met. [Citations.]" (*Herrera*, *supra*, 49 Cal.4th at p. 628.)

In short, "to establish unavailability, the prosecution must show that its efforts to locate and produce a witness for trial were reasonable under the circumstances presented. [Citations.] We review the trial court's resolution of disputed factual issues under the deferential substantial evidence standard [citation], and independently review whether the facts demonstrate prosecutorial good faith and due diligence [citation]." (*Herrera*, *supra*, 49 Cal.4th at p. 623.)

B. *Proceedings Regarding Preliminary Hearing Testimony at Trial*

On November 17, 2011, at the preliminary hearing, victims Xu and Chang testified about the respective robberies committed by defendant.

On May 21, 2014, the matter was set for trial on June 26, 2014, as "day 0 of 10."

7

On June 26, 2014, Chang failed to appear in court, and the trial court issued a body attachment.

In his trial brief, subject to a determination of due diligence, the prosecutor requested the preliminary hearing testimony of Xu and Chang be admitted into evidence due to their unavailability.

On July 8, 2014, at the due diligence hearing, the prosecutor stated that in early June 2014, Chang was served with a subpoena. She called him and indicated she had prepaid tickets for Taiwan to go on a "church mission." The prosecutor advised she was a witness and her failure to appear in court would cause the issuance of a body attachment. Chang responded she understood and explained she had prepaid airfare to Taiwan in middle of or late June and would not be back in the country until the end of summer. Chang did not appear on the date that she was subpoenaed.

San Gabriel Police Detective Gilbert Lee, who investigated the whereabouts of Chang, testified he had not contacted Chang during the three years between the preliminary hearing and trial. When he went to Chang's home about July 1, 2014, Yi Sheng Chen, her uncle, related Chang had left the country and he did not know when she would return. Lee did not contact any embassies to determine if Chang was out of the country.

Detective Robin Lopez, who was investigating defendant's robbery of Xu, testified he previously had shown Xu a photographic lineup but had not contacted Xu in the three years between the preliminary hearing and trial. On June 30, 2014, his attempt to locate Xu was unsuccessful. On June 5, 2014, a patrol unit was unable to serve Xu with a subpoena because she no longer resided at the address where the robbery occurred. Lopez was able to locate another address for Xu "[t]hrough internet-based law enforcement sources." At that address, the apartment manager told Lopez Xu recently had moved and provided her current phone number. Over the phone, Xu's husband related that although Xu had moved back to where the robbery occurred, she was in China and expected to return at the end of July. Lopez advised he had a subpoena for Xu

8

and needed her presence at trial. Her husband responded Xu would not be able to testify because she was in China but would be available upon her return.

After noting the "substantial delay from the time of the preliminary hearing from 2011 to the present in 2014 in which the case is actually going to go to trial," the trial court stated its belief that the prosecution could not "be expected to keep tabs on all the witnesses that might be subsequently called to testify at a trial when they don't actually know exactly when the case might go to trial." The trial court then found the prosecution had shown due diligence in its attempts to secure Chang's presence at trial. The court explained Chang had taken herself outside the process of the court, because although she had been served with a subpoena, Chang then left the country and was currently in Taiwan. The court indicated it would "issue the body attachment for her [arrest], but [thought] nothing else could be really done. It's not like next-door to Mexico where you can send an investigator into Mexico . . . I don't think [the prosecution] should be obligated to try to send an investigator to Taiwan to hook her up and bring her into court."

The prosecutor requested, and Lopez agreed, that Lopez would check throughout trial with Xu's husband "every couple of days to make sure [Xu] is not back in terms of [the prosecution's] ability to subpoena [her] for court in our jurisdiction." The trial court announced it would reserve its ruling on Xu's availability.

On July 9, 2014, the case was called for jury trial.

On July 15, 2014, at the resumed due diligence hearing for Xu, Lopez testified that when he again contacted Xu's husband, Frank Lao, Lao related Xu was caring for her ailing grandfather and would be in China until July 23, 2014. "Presumably," she would be available to testify on July 24, 2014.

The prosecutor alternatively proposed Xu's preliminary hearing testimony be read at trial or the court go "dark for a week" to enable him to secure Xu's presence. Defense counsel objected. After finding due diligence had been shown, the trial court ruled Xu's preliminary hearing testimony was admissible.

On July 17, 2014, Chang's preliminary hearing testimony was read to the jury. Xu's preliminary hearing also was read to the jury.

C. *Preliminary Hearing Testimony Admission Not Confrontation Right Violation*

We find substantial evidence supports the trial court's finding that Chang and Xu were unavailable as witnesses at trial and conclude the court did not abuse its discretion in finding the prosecution met its good faith, due diligence burden. Admission of the preliminary hearing testimony of Chang and Xu therefore did not violate defendant's right to confrontation.

"The prosecution is not required 'to keep "periodic tabs" on every material witness in a criminal case . . . .' [Citation.] Also, the prosecution is not required, absent knowledge of a 'substantial risk that this important witness would flee,' to 'take adequate preventative measures' to stop the witness from disappearing. [Citation.]" (*Wilson*, *supra*, 36 Cal.4th at p. 342.) The evidence presented does not reflect that during the lengthy lull of almost three years from the preliminary hearing until May 21, 2014, when the initial trial date was set, the prosecution knew, or should have known, Chang or Xu would leave the country, and thus be unavailable as a trial witness.

Further, Chang was under a state subpoena in early June 2014. Despite knowing a body warrant would issue for her arrest, Chang chose not to appear on June 26, 2014, the original trial date. The trial court issued a body warrant for her arrest. According to that court, apparently no other measure was available to prevent Chang from going to and staying in Taiwan. Defendant does not claim the trial court was imbued with authority to compel Chang to return from Taiwan to attend the California trial. (Cf. *People v. Watson* (1989) 213 Cal.App.3d 446, 453 [federal subpoena necessary to show due diligence where witness in foreign country *not served with state subpoena*].)

Similarly, Xu's unavailability as a trial witness was not due to lack of due diligence by the prosecution. Prior to trial, Xu was cooperative in that she participated in a photographic lineup and testified at the preliminary hearing. After an unsuccessful attempt to subpoena Xu on June 5, 2014, the police made various efforts to locate her whereabouts. These efforts were fruitless, because Xu was in China taking care of her

10

ailing grandfather and would not return until July 23, 2014. Although Xu might be available to testify on July 24, 2014, defendant opposed the prosecutor's suggestion the court go "dark for a week" to enable him to secure Xu's presence.

We find unpersuasive defendant's contention the prosecution lacked due diligence, because Xu's attendance at trial could have been obtained through the federal subpoena process. (28 U.S.C.§ 1783; *People v. St. Germain* (1982) 138 Cal.App.3d 507, 517 (*St. Germain*).) Assuming such federal subpoena process were available here,[3] the record does not reflect it would have been reasonable for the prosecution to pursue such process under these circumstances: The prosecution did not learn of Xu's presence in China until less than a month before trial; Xu was taking care of her ailing grandfather in China; and

---

[3]     *St. Germain*, *supra*, 138 Cal.App.3d 507, illustrates the situation where two witnesses were residing in another country but only one was found to be unavailable. The witness Kowsoleea, a citizen and resident of Holland at the time of trial, was declared unavailable because no court process could compel a foreign national's attendance and no treaty provision or compact with Holland existed. (*Id.* at pp. 517-518.) In contrast, Smith, the other witness, had a "green card," signifying her United States permanent resident status. (*Id.* at p. 516.) In view of such status, the prosecution "had available the remedy of a subpoena to be issued by the federal courts requiring the appearance as a witness before a 'body designated by it'—here the superior court jury— 'of a national or resident of the United States who is in a foreign country. . . .'" (*Id.* at p. 517, citing former 28 U.S.C. § 1783 (§ 1783).) The court in *St. Germain* concluded Smith was not unavailable and her former testimony therefore was not admissible, because the prosecution made no attempt to secure Smith's presence through this federal procedure. (*St. Germain*, at p. 517.)

*Mancusi v. Stubbs* (1972) 408 U.S. 204 involved a naturalized American citizen who became a permanent resident of his native Sweden at the time of trial. The Court concluded neither existing case nor statutory law, including the applicable version of section 1783 would have permitted a federal court to subpoena a United States citizen residing in a foreign country to testify in a state felony trial. (*Mancusi*, at pp. 211-212; see also *People v. Smith* (2003) 30 Cal.4th 581, 608, 610 [Japanese resident foreign exchange student who returned to Japan unavailable].)

In *Herrera*, the Court noted "[t]he version of . . . section 1783 that applied in *St. Germain* differed substantially from the version existing at the time of the relevant events in *Mancusi*. [Citations.]" (*Herrera*, *supra*, 49 Cal.4th 613, 626, fn. 6.) As we shall explain, we need not, and therefore do not, address whether the version of section 1783 in effect at time of trial was applicable to compel Xu's attendance at trial.

Xu was scheduled to return on July 23, 2014, and presumably would be available for trial the very next day.  Defendant makes no showing the federal subpoena process would have been sufficiently expeditious and effective to warrant its use by the prosecution.  He offered no evidence that issuance and service of a federal subpoena as well as Xu's presence at court would take place prior to July 24, 2014, and that Xu would obey the subpoena and thereby leave her ailing grandfather on his own.

Defendant's further contention that he did not have the same ability and opportunity to cross-examine Chang and Xu at the preliminary hearing as that afforded during trial is unsuccessful.  "'[A]dmission of . . . testimony under Evidence Code section 1291 does not offend the confrontation clause of the federal Constitution simply because the defendant did not conduct a particular form of cross-examination that in hindsight might have been more effective.'  [Citation.]"  (*Wilson*, *supra*, 36 Cal.4th 309, 346.)

## 2. *No Multiple Punishment Violation of Section 654 Shown*

Defendant contends that section 654 bars separate sentences on his convictions for the robbery of Lin (count 7) and dissuasion of Lin from reporting the robbery (count 8) and requires the stay of one of these sentences, because in committing both crimes, he entertained only "one objective—to rob Lin of her property and avoid being apprehended by the law" and "[t]he robbery was clearly not complete at the time [he] told Lin not to call the police."[4]

---

[4]    Contrary to defendant's companion contention, the double jeopardy bar is inapplicable to the robbery (count 7) and dissuasion of witness (count 8) crimes.  "In both the multiple punishment and multiple prosecution contexts, . . . where the two offenses for which the defendant is punished or tried cannot survive the 'same-elements' test, the double jeopardy bar applies."  (*United States v. Dixon* (1993) 509 U.S. 688, 696.)  "The same-elements test . . . inquires whether each offense contains an element not contained in the other; if not, they are the 'same offen[s]e' and double jeopardy bars additional punishment and successive prosecution."  (*Ibid*.)  The elements of robbery are entirely different than those for dissuasion of a witness.  "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."  (§ 211.)  In contrast, dissuasion of a witness is committed by a "person who attempts to prevent or dissuade another person who has been the victim of a crime . . . from . . . [m]aking any report of

"'Section 654 bars multiple punishment for separate offenses arising out of a single occurrence where all of the offenses were incident to one objective. [Citation.]' [Citation.] ""'A trial court's implied finding that a defendant harbored a separate intent and objective for each offense will be upheld on appeal if it is supported by substantial evidence.' [Citation.]" [Citation.]' [Citations.]" (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1368, abrogated on a different point by *People v. Scott* (2015) 61 Cal.4th 363, 391, fn. 3.) If the "trial court determines that section 654 applies to a particular count, the trial court must impose sentence on that count and then stay execution of that sentence." (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1466 (*Alford*).)

The trial court made no express finding whether the crimes in counts 7 and 8 were committed as part of an individual course of conduct with a single objective within the meaning of section 654.[5] "Imposition of concurrent sentences is not the correct method of implementing section 654, because a concurrent sentence is still punishment. [Citations.] For this reason, the imposition of concurrent terms is treated as an implied finding that the defendant bore multiple intents or objectives, that is, as a rejection of the applicability of section 654. [Citations.]" (*Alford*, *supra*, 180 Cal.App.4th at p. 1468.) By parity of reasoning, in imposing consecutive sentences on counts 7 and 8 based on the

---

that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge." (§ 136.1, subd. (b)(1).)

[5] The trial court ruled "[r]egarding counts 7 and 8, while these crimes occurred on the same occasion within the meaning of section 1170 (a)(6)[*sic*], the crimes occurred on different occasions from those of the remaining counts, and, therefore, mandatory consecutive sentences are required." This section reference in fact is to section 1170.12, subdivision (a)(6) of the Three Strikes law (§ 1170.12, subds. (a)-(d)), and provides: "If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to this section." However, "section 654 is irrelevant to the question of whether multiple concurrent convictions are sentenced concurrently or consecutively[,]" because "[s]ection 654 does not allow *any* multiple punishment, whether concurrent or consecutive." (*People v. Deloza* (1998) 18 Cal.4th 585, 594.)

13

mistaken belief that concurrent sentences were not proper, the trial court impliedly found defendant entertained multiple intents or objectives in committing the robbery and dissuasion of witness crimes.[6]

Defendant apparently argues, as a matter of law, the robbery and dissuasion of Lin were part of an individual course of conduct with the same objective of robbery, because the robbery was not complete when he threatened Lin, "Don't call the cops because I know where you live." When viewed in context, this threat was made after he took Lin's purse. He then ordered Lin to turn around and walk into the garage. She was halfway into the garage when she heard two or three popping sounds, like firecrackers. Defendant then got into an SUV and drove off. The two or three shots he fired after the already retreating victim were gratuitous acts constituting substantial evidence in support of the trial court's implied inference defendant fired the shots to intimidate Lin from reporting the robbery, a separate intent and objective than the robbery itself. (See *People v. Galvez* (2011) 195 Cal.App.4th 1253, 1263 [assault (§ 245, subd. (a)(1)), as gratuitous violence, separately punishable although section 654 barred separate punishment for witness dissuasion and robbery, because intent of cell phone robbery to prevent witness from contacting police].)

---

[6] Defendant apparently also contends the prosecution should be foreclosed from arguing separate sentences on counts 7 and 8 do not violate section 654's multiple punishment bar, because in its sentencing memorandum, the prosecution conceded: "Arguably the crimes against victim . . . Lin, robbery and witness intimidation, involve different criminal intents and objectives and could be considered outside the limitations of Section 654; however, considering the 11 other indeterminate and consecutive life sentences the [d]efendant must be sentenced to, the People will not pursue a 12th indeterminate sentence." We disagree. That respondent does not seek to pursue a particular punishment is inconsequential to the duty of the trial court to exercise its lawful discretion and impose a proper sentence. (See *People v. Baylor* (1989) 207 Cal.App.3d 232, 236 [errors in applicability of section 654 subject to correction whether "'point was raised by objection in the trial court or assigned as error on appeal'"].)

### 3. *Remand for Exercise of Discretion as to Concurrent or Consecutive Sentences*

In applying the Three Strikes law, the trial court stated defendant was to receive the minimum term of 25 years for each indeterminate sentence. The court further stated: "The Three Strikes law also requires mandatory consecutive sentence[s] for all serious or violent felony convictions. The court notes that all the crimes in this case were committed prior to the amendments of the Three Strikes law that occurred with the passage of Prop. 36 and became effective on November 6, 2012. Prior to the amendment, crimes that occurred on the same occasion, including serious or violent felonies could be sentenced to a concurrent term. While some of the crimes in this case occurred on the same occasion, not all occurred on the same occasion, and therefore, mandatory consecutive sentences are still required. So . . . regardless of the fact that these crimes occurred prior to the amendment of Prop. 36, he's still required to serve mandatory consecutive sentence[s] in all of his indeterminate terms."

Specifically, the trial court found "[r]egarding counts 5 and 6, although those crimes occurred on the same occasion within the meaning of section 1170[.12, subdivision (a)](6), the crimes occurred on different occasions from those of the remaining counts, and, therefore, mandatory consecutive sentences are required." The court made the same finding as to counts 7 and 8. The court found "[r]egarding the sentence on counts 10 and 11, while the crime[s] occurred on the same location, the crimes occurred on different occasions from those of [the] remaining counts, and, therefore, mandatory consecutive sentences is required."

Defendant contends his consecutive sentences on counts 1, 2, 5, 6, 7, 8, 10, and 11 must be reversed and the matter remanded for resentencing, because the trial court did not understand it had authority to impose concurrent sentences.

Respondent urges because the trial court's comments were ambiguous regarding awareness of its discretion to sentence concurrently, this court should deem the trial court followed the law by exercising its discretion in imposing consecutive sentences rather than concurrent sentences. Respondent concedes, however, that if we "should find that

15

the comments were not ambiguous and reflected an erroneous belief that consecutive sentences were mandated, the matter should be remanded for the trial court to exercise its discretion on whether to impose consecutive or concurrent sentences on counts 1 and 2, 5 and 6, 7 and 8, and 10 and 11."

We conclude the trial court misunderstood its authority in imposing, as mandatory, the challenged consecutive sentences and find well-founded respondent's concession that remand is warranted to allow the trial court to exercise its discretion to impose concurrent or consecutive sentences. We therefore reverse defendant's sentences on counts 1, 2, 5, 6, 7, 8, 10, and 11 and remand the matter with directions to the trial court to exercise its discretion to impose concurrent or consecutive sentences.

## DISPOSITION

Defendant's sentence is reversed and the matter is remanded with directions that the trial court exercise its discretion to impose a concurrent or consecutive sentence as to counts 1, 2, 5, 6, 7, 8, 10, and 11. The trial court shall direct the superior court clerk to prepare an amended abstract of judgment accordingly and deliver copies to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.

16